[No. 17785. Department Two. August 30, 1923.]

OTTO WIESE et al., Respondents, v. E. W. WIESE, Appellant.[1]

MORTGAGES (23)—ABSOLUTE DEED AS MORTGAGE—WEIGHT AND SUF-FICIENCY OF EVIDENCE. Evidence that a deed was intended as a mortgage to secure notes is not within the rule that it must be of the most clear and convincing nature, where the only circumstance in support thereof, viz., the failure to cancel the notes at the time, is met by the presumption that the deed was what it purported to be, that the consideration was fully equal to the value of the land, and that, for seven years following, the grantor sought and was given authority to sell it as agent of the grantees, and that he never offered payment of the indebtedness, which exceeded the value of the land and became outlawed, and that the grantees paid the taxes, etc.

SAME (14)—ABSOLUTE DEED AS MORTGAGE—LIABILITY. The grantor in an absolute deed intended as a mortgage cannot be damaged by the grantees' sale of the land to an innocent purchaser, where the value of the land was less than the amount of the indebtedness.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered September 26, 1922, upon findings in favor of the plaintiff, in an action to quiet title, tried to the court. Affirmed.

[1]Reported in 217 Pac. 994.

*Edwin H. Flick* and *Paul & Barker (Alfred J. Schweppe,* of counsel), for appellant.

*Roberts & Skeel* and *J. J. Geary,* for respondents Wiese.

*Shank, Belt & Fairbrook,* for respondents Butler *et al.*

PARKER, J.—The plaintiffs, Otto Wiese, his brother, sister and mother, commenced this suit in the superior court for Snohomish county seeking a decree quieting title in themselves as against the claims of the defendant brother and son, E. W. Wiese, to a tract of timber land in that county.

The defendant filed in the case his answer and cross-complaint, claiming that the plaintiffs' interest in the land was only that of mortgagees, evidenced by a deed of conveyance made by him to them, absolute in form but intended only as a mortgage to secure certain sums then owing and thereafter to become owing from him to them. The defendant, by his cross-complaint, made J. D. Butler and the Eagle Falls Logging Company parties to the action, because Butler and the logging company had become grantees of the plaintiffs, and, as alleged by the defendant, taking their so acquired interest in the land with knowledge of the alleged fact that the plaintiffs' interest in the land was only that of mortgagees. The defendant, in his cross-complaint, further alleged facts to show that, in the event the court finds Butler and the logging company to be innocent purchasers of the land so as to have the effect of divesting him of title thereto, he is, by such divesting of title, damaged by the plaintiffs' selling of the land to Butler and the logging company in an amount in excess of the indebtedness owing from him to the plaintiffs secured by such mortgage. This is followed by a

prayer that defendant be decreed to be the owner of the land, as against the claim of title thereto made by plaintiffs, Butler and the logging company, subject to the alleged indebtedness secured by the deed claimed to be a mortgage; and, in the alternative, for damages against the plaintiffs measured by the value of the land in excess of the alleged mortgage debt owing by the defendant to the plaintiffs.

The plaintiffs, replying to the defendant's answer and cross-complaint, deny the affirmative allegations thereof and pray for relief as in their complaint; and further, with a view of obtaining alternative relief in the event the court should hold the conveyance given to them by the defendant to be a mortgage securing an indebtedness due from him to them, allege facts to show the amount of such indebtedness and pray for the foreclosure of such mortgage in satisfaction thereof.

Butler and the logging company, made parties by the defendant's cross-complaint, answer denying the allegations thereof; and further allege that they are innocent purchasers of the land for value from the plaintiffs and pray that their title may be quieted as against the claim of title made by the defendant.

Upon the issues so tendered, a trial in the superior court upon the merits resulted in a decree being rendered by that court quieting title to the land in the plaintiffs and in their grantees, Butler and the logging company, as against the mortgage claim made by the defendant, E. W. Wiese, from which he has appealed to this court.

The controlling facts of this case, as we view them and as they were evidently viewed by the superior court, may be summarized as follows: The relationship of the parties has already been sufficiently noticed

by us to render it plain that this is primarily a family controversy. During all times in question, the plaintiffs lived in Iowa, while defendant lived in this state. On February 9, 1915, and for some years prior thereto, the defendant was the owner of the land in question. At that time he was indebted to the plaintiffs upon promissory notes, all of which were then long past due, aggregating the principal sum of $30,200. Adding interest then due and unpaid upon the notes, the indebtedness evidenced thereby then amounted to approximately $40,000. At that time there had accrued several years' unpaid taxes against the land, aggregating more than $1,800, which the defendant was then concededly unable to satisfy, having no resources other than the land itself. On that day he executed a deed of conveyance, absolute in form, for the land to the plaintiffs and caused it to be forwarded to them in Iowa, thus effecting its delivery. It was soon thereafter caused by them to be duly recorded in the office of the auditor of Snohomish county.

Just what negotiations were had between the parties leading up to the making of this conveyance is not very clear from the record before us. It seems, however, that the defendant had been making some effort to sell the land to the end that he might pay this indebtedness from the proceeds thereof and have some money after so satisfying such indebtedness; but being then unable to sell the land and having no prospect of paying the indebtedness and the taxes, he executed this deed and delivered it to the plaintiffs, concededly either in payment of the whole indebtedness or as security therefor. The plaintiffs claim the former, while the defendant claims the latter was the purpose of the conveyance.

At that time the land was worth not to exceed $34,-000. Upon sending the deed to the plaintiffs, the de-

fendant informed them that they might take the deed in full payment of the indebtedness evidenced by the notes, or they could hold the land as security for such indebtedness, as they might choose. They did not then, nor for sometime thereafter, in any direct manner evidence to him their election as to whether they would regard the deed as being given in payment of the debt or as security therefor. They did not then return the notes to him, nor were the notes tendered back to him until near the time of the commencement of this action in 1922, but at all times after the receiving of the deed the plaintiffs treated the notes as of no consequence. They never at any time thereafter demanded of the defendant payment of any part of the indebtedness evidenced by the notes, nor did he ever at any time thereafter offer to pay any part of such indebtedness.

Soon after receiving the deed, the plaintiffs paid the $1,800 or more overdue several years' taxes upon the land, and have paid, from year to year, all taxes charged against the land since that time; the defendant not paying nor offering to pay any portion of such taxes. The plaintiffs, after receiving the deed from the defendant, at his request, authorized him to sell the land for them; he repeatedly, covering a period of several years in communications to them, assuming the attitude that, as a matter of course, he would have authority to sell the land only as their agent, an attitude somewhat inconsistent with the view that he still owned the land and that the deed given by him to them was only a mortgage. In this connection, it is to be noted that they had at all times been willing for him to sell the land as their agent or buy it himself; that he made considerable effort to do so from time to time, and even to buy it himself, at a price named by them, but the offers obtained by him from others and

made by him in his own behalf were so unsatisfactory as to terms, in that very small amounts of initial payments were proposed, that they could not see their way clear to accept any of such offers.

The evidence, we think, also shows that the defendant, on repeated occasions, told others that the land belonged to his people in Iowa, giving prospective buyers to understand that he was seeking the sale of it as the agent of his people in Iowa. He exhibited to prospective buyers a blue print of the township in which the land lay, showing the different ownerships of lands therein and showing this land as belonging to his mother. Finally, in about December, 1921, or January, 1922, Butler, having learned, as he thought, that the defendant was trying to sell the land for his people in Iowa, approached the defendant offering $35,000 cash for the land. The defendant then informed Butler that the land was not for sale; also informing Butler that it belonged to his people in Iowa. This action of the defendant may have been prompted by a desire to get a better offer from Butler. The plaintiffs had authorized the defendant to sell the land for $34,000, giving him to understand that he should be compensated for making a sale of the land, either by a commission or by such additional sum above $34,000 as he might be able to sell it for. Butler, after being informed by the defendant as above noticed, communicated directly with the plaintiffs in Iowa, and negotiations were thus commenced directly between Butler and the plaintiffs, resulting in them selling it to him for $36,000, which sale was consummated about January 15, 1922, at which time the record title was in the plaintiffs.

Thereafter, on January 24, 1922, the defendant filed and caused to be recorded in the office of the auditor of

Snohomish county a notice claiming to be the owner of the land, and that the interest of the plaintiffs therein was in fact no greater than that of mortgagees under the deed of conveyance given by him to them in 1915, which notice manifestly prompted the commencement of this action by the plaintiffs. The land has never been of greater value than $40,000, though the defendant claims a much greater value for it. The present amount of the indebtedness evidenced by the notes, the amount paid by plaintiffs for taxes upon the land, and interest, would be approximately $75,000. This record is voluminous, and to further detail the facts here would be but to unnecessarily relate a long and involved story.

Upon the whole record, we have concluded that the decree of the trial court must be affirmed. It is elementary that, to call for the decreeing of a deed, absolute in form, to be a mortgage, requires evidence so showing of the most clear and convincing nature. We think it is not so shown in this case. It is true that, when this deed was given by the defendant to the plaintiffs, it was concededly given by him either in full satisfaction of or as security for the indebtedness then owing from the defendant to the plaintiffs as they might elect, and that the notes evidencing such indebtedness were not formally cancelled or surrendered at that time, nor until some years thereafter, when they were tendered to defendant near the time of the commencement of this action. The failure to so surrender or cancel the notes at the time, or soon after the giving of the deed, is to our minds the only circumstance of any consequence that lends support to the claim of the defendant that the deed given by him to the plaintiffs was intended by all the parties thereto as a mortgage to secure the indebtedness rather than as a satisfac-

tion of the indebtedness. As against such claim, we have, first of all, the strong presumption that the deed was, as upon its face it purports to be, an absolute conveyance. Also, the fact that the deed was given for a consideration fully equal to the then value of the land, viewing the total amount of the indebtedness then due as the amount of the consideration; the fact that, during a period of some seven years following the execution of the deed by the defendant, he sought and was given, authority by the plaintiffs to sell the land as their agent; the fact that they never demanded of him the payment of any part of the indebtedness during that period; the fact that he never offered to pay any part of the indebtedness during that period; the fact that the debt evidenced by the notes, so far as we can see from this record, would have become outlawed before the commencement of this action, a condition which the plaintiffs would hardly be likely to allow to occur, if they had understood the deed to be a mortgage; the fact that the plaintiffs not only paid the delinquent taxes accumulated for a number of years prior to the giving of the deed, but thereafter paid all subsequent taxes charged against the land during the seven years prior to the commencement of this action; the fact that defendant has never offered to pay or refund any portion of such taxes; the fact that the land at no time was ever materially different in value than the $34,000 for which the defendant was authorized by the plaintiffs to sell it, or the $36,000 for which the plaintiffs themselves ultimately sold it; and the fact that, if the indebtedness were still in existence secured by the deed as a mortgage, it would, at the time of the commencement of this action, amount to approximately $75,000. In the light of these facts, we think it must be concluded that the deed of conveyance from the

defendant to the plaintiffs given in 1915 was intended by the parties thereto, and has been regarded by them ever since that time, as an absolute conveyance in full satisfaction of the indebtedness evidenced by the notes, notwithstanding the notes were not then formally cancelled or surrendered.

We have not lost sight of the general principle that, if a deed of conveyance, absolute in form, be intended by all parties thereto as a mortgage to secure an indebtedness at the time it is given, it will continue to be so regarded and cannot be changed from a mortgage to a deed by events thereafter occurring, other than by an express agreement to that effect properly evidenced. It is, of course, here difficult to say whether or not the minds of the parties had fully met as to this deed being a mortgage or an absolute conveyance at the very time of its execution and delivery, but we think the attitude of the parties with reference thereto covering this long period of time, places the defendant in such a position that he should not now have the deed decreed to be a mortgage, nor have it decreed otherwise than an absolute deed of conveyance in full satisfaction of the indebtedness evidenced by the notes in question.

The defendant's contention that the deed given by him to the plaintiffs in 1915 was given and accepted only as a mortgage to secure the indebtedness then owing by him to them is accompanied by the further contention that the plaintiffs agreed to accept $34,000 in full payment of the indebtedness in connection with their authorization to him to sell the land for that sum; and that, therefore, he is entitled to reap the benefit of the full value of the land in excess of that sum, which he claims is largely in excess of that sum. The trouble with this contention is, we think, that it is all but conclusively proven that the land was not worth to exceed

$36,000, or at most $40,000, and also that there was nothing in any of the communications or authorizations from the plaintiffs to the defendant indicating their consent to reduce the indebtedness as such to $34,000; and further, that the indebtedness which would be secured by the deed viewed as a mortgage would now aggregate approximately $75,000. So that, if the deed should be held to be a mortgage securing the indebtedness, it is manifest that, as between the plaintiffs and the defendant, the plaintiffs would be entitled to foreclosure, which would mean a sale of property worth not exceeding $40,000 to satisfy a $75,000 indebtedness. Having reached the conclusion that we have on the first branch of the case, that the deed is an absolute conveyance given in satisfaction of the debt, these observations may seem of little moment. They, however, suggest equities which should not be lost sight of should the question of whether the deed is an absolute conveyance or a mortgage be regarded as doubtful.

As to the question of Butler and his grantee, the logging company, being innocent purchasers for value, a careful review of the evidence convinces us that they both are such. This, of course, in any event clears their title of the mortgage claim of the defendant. If the deed be regarded as a mortgage, as between the plaintiffs and the defendant, the sale of the land by the plaintiffs to Butler and the logging company vesting good title in them by reason of their being innocent purchasers might call for a judgment in the form of damages in favor of the defendant and as against the plaintiffs, as prayed for in the alternative by them, if, under this aspect of the case, the defendant had under such circumstances been damaged. But manifestly the defendant cannot be said to have been damaged in any sum, even viewing the deed as a mortgage, for it

is wholly impossible that the defendant could be damaged by divesting him of title to land worth not to exceed $40,000 when there was thereby satisfied an indebtedness owing from him to the plaintiffs approximating $75,000. Manifestly, the defendant's damage would in any event have to be measured by the excess value of the land over the indebtedness owing by him to the plaintiffs.

Viewing this case from every angle, the decree quieting title in the plaintiffs and Butler and the logging company, their grantees, as against the claim of title made by the defendant, E. W. Wiese, should be and is affirmed.

MAIN, C. J., FULLERTON, TOLMAN, and PEMBERTON, JJ., concur.