[No. 19162.    Department One.    September 1, 1925.]

FREDERICK GRONNERT *et al., Appellants,* v. COLUMBIA
RIVER DOOR COMPANY, *Respondent.*[1]

MORTGAGES (18, 23)—ABSOLUTE DEED AS MORTGAGE—INTENT—EVI-
DENCE—SUFFICIENCY. The deed of a bank examiner, holding legal
title to a debtor's property, made to a grantee who advanced the
money to pay the debts and clear the title, is not shown to have been
intended as a mortgage to secure repayment of the advances, where
the evidence as to such intent was conflicting, and, as part of the
transaction, the grantee gave to the debtor a contract of conditional
sale, at the stated price in the amount of the advances, and then
leased the property from the debtor who soon terminated the lease,
refused to accept rent thereunder, and forfeited all his rights under
the conditional sales contract by default in making the payments for
two years.

Appeal from a judgment of the superior court for
Cowlitz county, Kirby, J., entered October 16, 1924,
upon findings in favor of the defendant, in an action
to quiet title, tried to the court. Affirmed.

*Chester A. Sheppard* and *A. H. Imus,* for appellants.
*Malarkey, Seabrook & Dibble* and *J. E. Stone,* for
respondent.

PARKER, J.—This action was originally commenced
by the plaintiff Gronnert in the superior court for
Cowlitz county, seeking recovery of, and quieting his
claim of title to, a tract of land and a sawmill plant
thereon, situated in that county. Gronnert's claim of
title was rested upon a sheriff's deed issued to him by
the sheriff of that county following a sale under an ex-
ecution issued upon a judgment rendered against
Kalama Lumber and Shingle Company. While that
company was, by Gronnert, originally made a defend-
ant in the action, it later became in effect a plaintiff
with him, seeking recovery from the defendant, Colum-

[1]Reported in 238 Pac. 908.

bia River Door Company; that company being in possession and claiming absolute ownership of the property as against the claims of both Gronnert and the Kalama company. The case was commenced and it proceeded as one of equitable cognizance because its successful maintenance by Gronnert and the Kalama company as against the Columbia company depended upon the decreeing of the deed, absolute in form, under which the Columbia company held the property, to be only a mortgage securing an indebtedness owing from the Kalama company to the Columbia company, and also decreeing that payment of such indebtedness had been made. The Columbia company not only negatively resisted the claim of Gronnert and the Kalama company, but also sought affirmative relief in the form of a decree quieting its title to the property against the claims of both Gronnert and the Kalama company. The case proceeded to trial in the superior court, which resulted in findings and decree in favor of the Columbia company as prayed for by it, from which Gronnert and the Kalama company have jointly appealed to this court.

On May 18, 1916, the state bank examiner had become vested with title to the property in question, by virtue of his official position as liquidator of the affairs of the then insolvent Cowlitz County bank. On that day he entered into a conditional sale contract with the Kalama company for the sale of the property to it for the sum of $32,202, the larger portion of which was to be paid in future maturing instalments. The Kalama company was, by the terms of the contract, given the right of immediate possession, but the title was retained by the state bank examiner until all of the instalments of the purchase price should be fully paid. Time was made the essence of the contract, and it contained stringent forfeiture provisions as against the Kalama company, by which it was to forfeit all

right to the property and all sums paid by it upon the purchase price in the event of its default in making payments of any of the instalments.

In August, 1919, the Kalama company had become financially involved and was unable to make further payments on the instalments of the contract, and was clearly in default with reference thereto, to such an extent that its rights under the contract were subject to forfeiture. There was then an unpaid balance of the purchase price amounting to $11,785.72. The Kalama company was then also indebted to others in sums aggregating $46,945.61, a considerable portion of which was owing to the Columbia company. It was then agreed between the Columbia company and the Kalama company that the Columbia company would advance sufficient funds to pay all of this indebtedness, other than the portion owing directly to it; that the state bank examiner should, upon payment of the unpaid balance of the conditional sale contract from the funds so advanced, execute a deed conveying the property to the Columbia company; that the Columbia company would then execute a conditional sale contract for the sale of the property to the Kalama company; and that the Kalama company, thereby acquiring right of possession of the property, would then lease the same to the Columbia company. Sufficient funds being advanced by the Columbia company as agreed upon, the $11,785.72 balance due upon the conditional sale contract executed by the bank examiner and the other indebtedness, except that owing directly to the Columbia company, were paid therefrom. The state bank examiner then duly executed and delivered to the Columbia company a deed of conveyance of the property, absolute in form. There was then executed, delivered and became effective a conditional sale con-

tract between the Columbia company and the Kalama company for the sale of the property by the Columbia company to the Kalama company for a stated consideration of $58,731.33, that being the total of the sums advanced by the Columbia company for the payment of the balance due upon the bank examiner's conditional sale contract, and the other debts, together with the amount owing by the Kalama company direct to the Columbia company. By the terms of this conditional sale contract the purchase price was to be paid "$15,000 on or before the first day of January, 1920, and the sum of $15,000 on or before the first day of July, 1920, and a further sum of $15,000 on or before the first days of January and of July of each and every year thereafter, until the total purchase price hereinabove provided for shall have been paid, together with interest at six per cent (6%) per annum on all deferred payments."

The contract further provided:

"It is mutually covenanted and agreed that time is of the essence of this agreement, and if the party of the second part shall fail to pay the said instalments or any of them within thirty (30) days after each of said payments become due, said party of the first part shall be released from all obligation, both at law and in equity, to convey said property and in such event the party of the second part shall forfeit all rights under this contract and all payments hereunder made by said second party shall be forfeited to the party of the first part in full satisfaction and liquidation of all damages sustained by said party of the first part."

This contract having given the Kalama company the right of possession, such right of possession was thereupon leased by that company to the Columbia company for a period of three years, at a "rental of fifty cents per M on all logs cut and sawed" by the plant; there being no stipulation in the lease, however, obligating

the Columbia company to operate the mill. The lease also contained a provision authorizing the Kalama company to terminate the lease at its own election upon sixty days' notice. The deed from the bank examiner to the Columbia company, the conditional sale contract between the Columbia company and the Kalama company, and the lease contract between the Kalama company and the Columbia company appear to have been actually signed and acknowledged on different dates. It is plain from the record, however, that, by their respective final deliveries on or about September 23, 1919, they each became effective as fully executed and delivered instruments in the order agreed upon; that is, first the deed, second the conditional sale contract, and third the lease.

On December 30, 1919, the Kalama company gave to the Columbia company notice of its election to cancel and terminate the tenancy under the lease. The Columbia company then unavailingly protested against the termination of the tenancy. However, at no time later than June, 1920, did either the Kalama company or the Columbia company regard the tenancy under the lease as any longer existing. The Kalama company has never at any time since the entering into of the conditional sale contract with the Columbia company paid, or offered to pay, any portion of the purchase price stipulated in that contract. The Columbia company, soon after the execution and the becoming effective of the lease, entered into possession and commenced the operation of the plant, and, prior to June, 1920, attempted to pay the rent reserved by the terms of the lease; which offer of payments, however, was rejected by the Kalama company upon the theory that it had terminated the lease according to its right under the terms of the contract.

It is apparent that after June, 1920, the Columbia company's possession of the property and the plant was maintained and asserted by it upon the theory that it was the absolute owner of the property freed from all obligations owing by it to the Kalama company under either the conditional sale contract or the lease contract. Its possession of the property and the plant after June, 1920, was not challenged by either Gronnert or the Kalama company until the commencement of this action, approximately two years later in June, 1922. The execution sale under which Gronnert claims title occurred March 12, 1921, which, it will be noticed, was approximately a year after the rights of the Kalama company were terminated under the conditional sale contract, assuming that that contract and the deed from the bank examiner to the Columbia company were all that they purport to be upon their face and were not merely parts of a mortgage transaction.

As has been already noticed, the principal controversy here is as to whether or not the deed executed and delivered by the bank examiner to the Columbia company at the instance of the Kalama company, in compliance with the agreements above noticed between the Columbia company and the Kalama company, was intended by those companies to be a mortgage or an absolute conveyance, as upon its face it purports to be. It is not claimed that Gronnert or the Kalama company have any rights remaining under the conditional sale contract as such, but that the deed is a mortgage to secure an indebtedness which has been paid by the Columbia company's use of the property. The evidence is voluminous and in many particulars in sharp conflict. There is, however, at least one outstanding fact which to our minds militates all but conclusively against the view that the parties had any intent that

that deed should be regarded only as a mortgage securing a debt in the aggregate amount recited in the conditional sale contract as the purchase price; and that is the fact that the conditional sale contract was actually executed as a part of the transaction. To our minds, it falls little short of conclusively negativing the idea that the consideration therein named was other than a pure purchase price consideration.

It would be quite unprofitable to review the evidence with a thought of reconciling its sharp conflict or determining where the truth lay, apart from the fact of the execution of the conditional sale contract between the Columbia company and the Kalama company. The trial court found, and we think correctly, that there was no intent on the part of either the Kalama company or the Columbia company that the deed of conveyance made by the bank examiner to the Columbia company should be considered other than as an absolute conveyance. The evidence is not at all clear and convincing that there was any intent that the deed should be only a mortgage securing a debt, even viewed apart from the fact of the execution of the conditional sale contract. The record evidences a very painstaking trial and consideration of this case by the trial judge.

The judgment and decree are affirmed.

TOLMAN, C. J., MITCHELL, BRIDGES, and ASKREN, JJ., concur.