[Civ. No. 1223. Fourth Appellate District.—June 15, 1933.]

E. GIOMETTI et al., Respondents, v. VICTOR ETIENNE, Jr., Appellant.

Peter tum Suden, Richard tum Suden and Frank Kauke for Appellant.

Carl E. Lindsay, H. J. Carling, Lindsay & Gearhart and H. L. Preston for Respondents.

ANDREWS, J., *pro tem.*—On December 12, 1927, the parties to this action entered into a contract whereby defendant was to erect, upon land which plaintiffs would deed to him, buildings, machinery and equipment for the manufacture and sale of ice.  Defendant was to sell this plant and equipment as finally completed to the plaintiffs for the purchase price of $65,000, of which $15,000 was to be cash, the balance to be paid from receipts for the sale of ice made in the plant.  An accounting and payment was to be made each week.  The balance due to defendant was to bear interest at eight per cent.  Then appears this provision:

"The full purchase price shall be computed from the above stated price in paragraph IV, with the addition thereto of such sum as may be due on account of interest and bonus, if applicable and such other sums as may be due the seller on account of additional equipment."

Title was to remain in defendant until the purchase price was paid in full and in cash.  Then follows this language:

"Purchasers agree to pay seller a bonus of 75 cents per ton of ice manufactured in the plant until the full purchase price is paid to the seller.  This bonus to be paid seller due to exceptionally favorable terms of purchase granted.  Provided, however, if purchasers complete payment to seller of all sums of money due him prior to November 15, 1928, this provision as to bonus shall be null and void."

Other provisions related to insurance, patents, acceptance, delivery, rights on default, and special provisions as to cost of buildings.  Pursuant to the contract the plant was erected and turned over to the plaintiffs on the twenty-seventh day of April, 1928.  Plaintiffs thereafter used the plant in

the manufacture of ice and made payments from time to time on the contract.

On June 10, 1931, there was due defendant, according to his account, about the sum of $28,000. On that date he claimed to have discovered that plaintiffs had been guilty of dishonest violations of the contract by failing to account for and pay over several thousand dollars which had accrued from the sale of ice and which had not been reported. On July 10, 1931, defendant gave notice of default and demanded possession of the property. Thereafter on July 15, 1931, plaintiffs, claiming the contract to be usurious, brought this action to have the rights of the parties determined under the contract, for an accounting, for the settlement of adverse claims, for the conveyance of the property from defendant to themselves, and for other relief. Defendant interposed a cross-complaint setting out his rights under the contract, asked for possession of the property, confirmation to his title thereto, attorneys' fees and damages. The trial court held the contract usurious and ordered the property conveyed to plaintiffs.

The controlling issue is whether the contract was usurious. That issue is presented as arising in two ways: (a) That the transaction to which the contract related was in reality a loan of money, or that the plan of payment adopted was designed to enable defendant to obtain a greater rate of interest than is permitted by law for the forbearance of money which was due under the contract; and that an ulterior purpose inspired the wording of the contract to disguise the true intent and the terms of payment purporting to relate to the conditions of sale were but subterfuge to conceal its unlawful purpose; (b) that the contract on its face, and according to necessary legal construction, imports the intent to exact more than the legal rate of interest for the forbearance for use of money.

A study of the pleadings, the record of the trial, and the findings of fact give no indication that any issue relating to an ulterior purpose or attempt at subterfuge in the formation of the contract was ever advanced or considered until raised in the brief of plaintiffs here, and that such contention by plaintiffs is not sustained in the record is a necessary conclusion.

The question of usury which is the issue of the case rests, therefore, upon the construction to be given to the contract. If the contract is one for the sale of property and the method of payment was intended as one of the elements of the purchase price there would be no usury, but if the purchase price is fixed by the contract independently of the provisions for payment of interest and as a present fixed cash price payable at the option of the plaintiffs, the interest and bonus provisions having no purpose except to relate to the forbearance of payment, then usury might be found.

In the consideration of this contract plaintiffs advance the contentions (a) that this language in the contract "that the purchasers . . . do hereby agree . . . to purchase and receive from the seller . . . and pay the seller as the purchase price thereof the sum of . . . ", indicates conclusively the intent to fix a purchase price and that all other provisions relate to the forbearance for its immediate payment; (b) that the deed of land provided to be made by plaintiffs to defendant was intended as security for the payment of the purchase price thus fixed and was in legal effect a mortgage for that purpose.

Giving attention to the language of the contract for the purpose of determining what was therein expressed as to the entire purchase price of the property, it is found that subsequent to the first mention of the purchase price a paragraph was added which so completely covers this point that doubtless those who prepared the contract had in mind to settle this question. This is set forth in the first quotation in the *résumé* of the contract above and clearly shows the bonus and interest to be included in the meaning of purchase price.

If the real intent of the parties was that of purchaser and seller, as distinguished from the loan of money or the forbearance for the use of money, it is immaterial what form or plan was adopted to accomplish that purpose. (*Pacific Finance Corp.* v. *Lauman,* 95 Cal. App. 541 [273 Pac. 48]; *Lamb* v. *Herndon,* 97 Cal. App. 193 [275 Pac. 503].) It might provide a purchase price with deferred payments bearing twenty per cent interest due at future dates and the provision would not be usurious. This contract involved the expenditure of $65,000, with a cash payment of only $15,000, leaving a very large portion of the

purchase price dependent upon the future conduct of the business which must carry with it the hazards incident to business such as fire or earthquake, the introduction of competitive service, honesty and skill in carrying on the enterprise, general prosperity and available markets for the product and other factors. It may have been the hazards involved and the large amount at stake that led to the agreement for a bonus without which it would be difficult to finance such an enterprise. Leaving out of account for the moment the provision which would have rendered the bonus not collectible if the purchase price had been paid in November of 1928, the contract would then clearly be one where the bonus was a part of the purchase price, very considerable in amount, and which would inure to the profit of the seller due to the carrying on of the business and which could not have been avoided by the buyer under any provision of the contract enabling him to make payment in cash or in any other way.

What effect, then, shall be given to the provision of the contract set forth in the second quotation where the contract is described? The proviso does carry some implication of the right to make payment at any time prior to said date, which understanding would be increased by the knowledge of the parties that so large a sum would probably be impossible of payment from sales of ice and therefore a reasonable construction of this provision would be that the parties intended that it might be paid in cash during the period covered by the proviso. The proviso had another possible bearing upon the contract illustrating its purpose. Due to the hazards which have been mentioned it would be a pronounced incentive to a high degree of diligence in the conduct of the business and an early and continuous reduction of the unpaid balance which would assure to seller greater safety for his investment. Whatever may have been the reason which prompted the insertion of this proviso, it never became a factor in determining the rights of the parties due to the fact that the contract was not within the time paid in full. The only possible force it could have favorable to the purchaser was that it might lend some color to its claim that the sale was for a present payable cash price and therefore all other provisions which enabled the seller to collect more than legal interest indicated the usurious character of the contract. But this contention can-

not be sustained in the light of the obvious general under-standing of the parties that payment was to be made, and was only contemplated to be made by the sale of ice which was carefully regulated, to be made weekly. Also, this option was only to pay the contract in full within a limited time and receive a discount by so doing, which brings the contract into the classification of sales where a larger price is exacted over the cash price as one of the terms of the sale with a conditional discount provision. This privilege or option, if construed to be such, was given to the purchasers to accomplish a deduction from the sale price if made on time and was not binding upon the buyer and, not having been taken advantage of, leaves the contract as if the proviso had never been inserted.

Upon the question of the deed indicating a purpose to secure the purchase price and amounting in equity to a mortgage, if so regarded, it would merely affect the manner of enforcing the rights of the parties under the contract by foreclosure instead of forfeiture, inasmuch as if security, it was for the faithful performance of the contract according to its terms. This theory of a mortgage does not work out the real intent of the parties as shown by the contract. The deed was a part of the transaction. It was absolute in form. It is to be construed with the contract to which it related, both as parts of one instrument, and thus construed the contract becomes a condition subsequent as if inserted in the deed and the right of forfeiture growing out of this condition depended upon the faithful performance of the contract by the buyer and the determination of the rights of the parties by reason of that condition will be worked out by the result of this action.

Upon the whole consideration of the contract it must be construed as one of sale and purchase and so construed there is nothing in its provisions which renders it usurious.

It is urged that the suit was prematurely brought because the default in the contract was fraudulent and equity would not tolerate such an action. It is the theory of plaintiffs that the contract was affected by usury, the rights of plaintiffs worked out under that theory were so entirely different from the rights of the parties if no usury existed that the whole situation justified the bringing of an action by either party which would involve the ques-

tion of usury and of default and of an accounting generally and a settlement of the rights involved in this contract. The question of the equitable standing of the parties should be determined in the suit, not as a preliminary to bringing it.

Notwithstanding the fact that the findings have worked out the amount which would be due to defendant by reason of interest and of the bonus provision in event that no usury existed, there are other important issues to be settled by the trial court, such as a matter of attorneys' fees, damages claimed for the detention of the property, asserted fraudulent character of plaintiffs' default as bearing upon the rights of plaintiffs to retain the property upon payment of the amount due defendant as indicated by this decision, which render it necessary that a new trial be had.

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.

An order purporting to grant a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was made on August 14, 1933, and thereafter said order was vacated and set aside on August 31, 1933, on the ground that it had not been concurred in by the necessary number of justices qualified to sit in said matter.