[No. 25033. Department Two. November 30, 1934.]

JOHN W. ALLEN, *as Receiver and Liquidator of Puget Sound Savings & Loan Association, Respondent,* v. GUST WILLIAM GRAAF, *Appellant,* CHARLES F. CLISE, *as Trustee, et al., Respondents.*[1]

[1]Reported in 38 P. (2d) 236.

432

*Monheimer & Griffin* and *Preston, Thorgrimson & Turner,* for appellant.

*Battle, Hulbert, Helsell & Bettens,* for respondent Allen.

*Roberts & Skeel* and *Wm. Paul Uhlmann,* for respondent Clise.

HOLCOMB, J.—This appeal is from a decree by the trial court in favor of the liquidator of Puget Sound Savings & Loan Association, a corporation, against defendant Graaf, adjudging him liable to pay certain sums delinquent under an alleged purchase contract, and adjudging the interest of Clise, trustee, under a first mortgage bond issue, superior to the interest of defendant Graaf in the property in Seattle known as the Windham Apartment. After hearing all the oral testimony and receiving documentary evidence, the trial court made, among others, the following material findings:

"(5) That on the 19th day of May, 1925, the defendant Gust William Graaf was the owner in fee of

the following described real property situated in the city of Seattle, county of King, state of Washington, towit:

"Lot Twelve (12) in Block K of Bell's Fifth Addition to the city of Seattle; Lots Seven (7) and Eight (8) in Block Thirteen (13) of Mercer's Addition to North Seattle; Lots Thirteen (13) and Fourteen (14) in Block Thirty-four (34) of the Map of D. T. Denny's Home Addition to the city of Seattle;

"That on said 19th day of May, 1925, said defendant Gust William Graaf, by warranty deed duly executed, acknowledged and delivered, conveyed the above described real property to the defendant Real Estate Improvement Company, in exchange for seven hundred (700) shares of the preferred capital stock, Series A, of said Real Estate Improvement Company; that the parties to said sale fully intended the transaction to be an outright sale and did not intend that said deed was given as security for a loan; that said deed was thereupon recorded in Volume 1263 of Deeds, page 518, records of King county, Washington, under Auditor's Receiving No. 2020246.

"(6) That on said 19th day of May, 1925, said Real Estate Improvement Company and said defendant Gust William Graaf entered into a real estate contract covering the purchase and sale of the above described real property; that a true copy of said real estate contract was attached to plaintiff's complaint, marked Exhibit 'A', and that the original executed copy of said contract, signed and acknowledged by the defendant Gust William Graaf, was introduced in evidence in this case; that at the time said contract was executed, both parties thereto fully intended that it operate as a real estate contract strictly in accordance with the terms and provisions therein set forth; that neither of said parties intended that said contract in any way evidence a loan.

"(7) That on the 5th day of April, 1926, said Real Estate Improvement Company and said defendant Gust William Graaf entered into a supplemental agreement which referred to the aforesaid real estate contract and definitely fixed the full purchase price of the property covered thereby to be the sum of $303,-

794.38; that at the time said supplemental agreement was executed, both of the parties thereto understood the effect and import thereof, and fully intended that it be construed to be a supplemental agreement definitely fixing the purchase price to be paid by the defendant Gust William Graaf, for the real property described in the aforesaid real estate contract, and that it be construed strictly in accordance with its terms and provisions; that a true copy of said supplemental agreement was attached to plaintiff's complaint, marked Exhibit 'B', and that the original executed copy of said supplemental agreement, signed and acknowledged by the defendant Gust William Graaf, was introduced in evidence in this case.

"(8) That on said 19th day of May, 1925, said defendant Gust William Graaf was able to read and speak the English language without difficulty, that said transaction at said time and before the above mentioned instruments were executed was fully discussed in detail by all parties interested therein; that said defendant Gust William Graaf, on said date and prior thereto, and at all times since, knew and has known that he was dealing with the defendant Real Estate Improvement Company, and fully intended to deal with said company."

"(11) That said defendant Gust William Graaf has failed to prove any of the material allegations set forth in his affirmative defense and cross-complaint and on which his prayer for relief was based.

"(12) That said defendant Gust William Graaf, for several years subsequent to the year 1925, knowingly and intentionally received the benefit of dividends paid on the stock which had been issued to him by said Real Estate Improvement Company in exchange for the aforesaid real property, and which dividends were, with his full knowledge and consent, credited by said Real Estate Improvement Company on the purchase price as set forth in said real estate contract; that said defendant Gust William Graaf raised no objection concerning said stock until after the payment of dividends thereon ceased.

"(13) . . . that said defendant Gust William Graaf knew not later than the last part of August, 1925, that

bonds had been issued on said real property and were secured by said trust deed and mortgage executed by Real Estate Improvement Company, as the owner of said real property, and that said bonds were being sold to the investing public but stood silently by and permitted all of said bonds to be sold to the investing public for value without objection, and failed to take any affirmative action in connection with the alleged fraud claimed to have been perpetrated upon him or to test the validity of such trust deed or mortgage or the validity of said bonds issued thereunder, until he made his answer and cross-complaint in this cause.

"(14) That all of said bonds now in the hands of the substituted plaintiff herein were purchased by Puget Sound Savings & Loan Association in the ordinary course of business, before maturity at par value plus accrued interest."

Appellant assigns fifteen errors as grounds for reversing the judgment, but argues them under four points.

The first point argued is that the transaction between Graaf and the Real Estate Improvement Co. was a loan, the payment of which was secured by Graaf's property.

It will be noted that the trial judge found that it was not a loan, but a sale as between Graaf and the Improvement Company. Not only the oral testimony, of which the trial judge had the advantage of hearing and judging of its credibility, supports the finding that the transaction was exactly what it appeared to be on the face thereof, but all of the documentary evidence overwhelmingly supports the trial court's finding. By several writings, some of which were executed with formality and some of which were merely informal writings, Graaf confirmed and corroborated that the ownership was in the Real Estate Improvement Co. Hence, we cannot say on the record before us that the evidence preponderates against the trial

court's finding. *Neff v. Whitham,* 147 Wash. 101; 265 Pac. 462. On the contrary, we are prepared to say that the evidence is overwhelmingly in favor of the findings made by the trial court.

This court has long adhered to the rule that, when property is conveyed by a deed, absolute in form, the presumption of law is that the transfer is what it appears to be, and that he who would assert that it was given as a mortgage must so show by clear and convincing evidence; and that the intent must be that of both parties and not merely of one party. *Johnson v. National Bank of Commerce,* 65 Wash. 261, 118 Pac. 21, L. R. A. 1916B, 4; *Kegley v. Skillman,* 68 Wash. 637, 123 Pac. 1081; *Hansen v. Abrams,* 76 Wash. 457, 136 Pac. 678; *Boost v. Capen,* 111 Wash. 227, 190 Pac. 240; *Pittwood v. Spokane Savings & Loan Society,* 141 Wash. 229, 251 Pac. 283. Cf. *Plaza Farmers Union Warehouse & Elevator Co. v. Tomlinson,* 176 Wash. 178, 28 P. (2d) 299.

From the record, it also appears that, in the latter part of 1924, or early in 1925, Graaf attempted to obtain a loan from W. D. Comer & Co. in the sum of one hundred sixty-five thousand dollars to enable him to construct an apartment house on a part of the real estate involved. Comer & Co. was willing to make such a loan, to be secured by a trust deed or mortgage covering the property and the apartment building to be erected thereon. It was subsequently discovered that the apartment building would cost considerably more than one hundred sixty-five thousand dollars, and as Graaf was unable to obtain additional funds, Comer & Co. refused to make the loan because of insufficiency of security offered.

After several conferences between them, Graaf agreed to a proposal by which he would sell to Real Estate Improvement Co. the property involved, in con-

sideration of the construction of the apartment house by the Improvement Co. and the issuance to him of seventy thousand dollars worth of preferred stock of Real Estate Improvement Co. The latter company would then construct and pay for the apartment building, and enter into a contract to sell the property so improved to Graaf at a purchase price to be determined by adding to the cost of the building the value of the real estate and other specified items. Graaf was to pledge and did pledge to Real Estate Improvement Co. the preferred stock issued to him as security for performance of his part of the contract. Thereupon, on May 19, 1925, the documents necessary to carry the plan into effect were executed. The Real Estate Improvement Co. constructed the apartment building as agreed, which, with real estate, building costs, insurance, interest and financing, reached a total of $303,794.38. That was the sum for which the contract and a subsequent supplemental contract were executed by the Improvement Co. and Graaf.

The fact that Graaf was unable to finance the building of the apartment house he desired to build on his property for any amount of money he could secure as a loan, is almost conclusive evidence that the contract finally entered into between him and Real Estate Improvement Co. was a contract of sale.

The facts above stated make this case very like the cases of *Conner v. Clapp*, 37 Wash. 299, 79 Pac. 929; *Nutter v. Cowley Investment Co.*, 85 Wash. 207, 147 Pac. 896; and *Gronnert v. Columbia River Door Co.*, 136 Wash. 13, 238 Pac. 908, which govern this case.

The second point urged by appellant is that the fact that, at the time of suit, respondent claimed as assignee of Real Estate Improvement Co. contract, gives respondent no better right against Graaf than

Real Estate Improvement Co. had prior to the assignment.

It is argued under this head that, since the real estate contract sued upon is not a negotiable instrument, respondent's rights in the premises are no better than the rights of Real Estate Improvement Co. prior to the assignment.

This argument overlooks the fact that Puget Sound Savings & Loan Association purchased the property in question from the record owner thereof, as well as taking an assignment of the real estate contract. The deed from Graaf to Real Estate Improvement Co. was recorded May 20, 1925, and from that date until the property was sold to the Puget Sound Savings & Loan Association in February, 1931, Real Estate Improvement Co. continued to be the record owner. In *Wiese v. Wiese*, 126 Wash. 246, 217 Pac. 994, we held that, as between the original grantor and an innocent third party purchaser, the original grantor could not assert that his original deed was, in fact, a mortgage.

Furthermore, Graaf continued to make payments as called for under the contract until some time after a receiver had been appointed for Puget Sound Savings & Loan Association. He never at any time during that period asserted that the transaction was a loan, or that the same was usurious. Although we do not consider him entirely innocent, nevertheless, as between two innocent persons, the one must suffer who by his acts or laches has made the loss possible. *Linn v. Reid*, 114 Wash. 609, 196 Pac. 13; *Bank of California v. Danamiller*, 125 Wash. 255, 215 Pac. 321, 36 A. L. R. 753; *Rosenkranz v. Guaranty Trust Co.*, 160 Wash. 548, 295 Pac. 487.

The third contention is based upon the incorrect assumption that the debt created by the transaction was tainted with usury. Having determined

that it was a sale and not a loan, the transaction could not be tainted with usury. That being decisive, it is useless to further discuss the matter.

The fourth contention is that the bonds are non-negotiable by reason of the fact that they incorporate the tax provisions of the mortgage, and that the bondholders are subject to Graaf's equities.

Under findings thirteen and fourteen, made by the trial court and well supported by competent evidence, this question is also determined by our decisions just cited to the effect that, where one of two innocent persons must suffer, the one who makes the suffering possible must bear the loss.

Moreover, the instruments were placed of record two years before our present statute was enacted, while the statute, Rem. Comp. Stat., §10596, provided that, when such instruments were of record in the office of the proper county auditor, they should be valid against *bona fide* purchasers from the date of their filing for record, and should be notice to all the world. *Honefenger v. Green,* 145 Wash. 39, 258 Pac. 840. Under the 1927 statute, the effect is the same. *Price v. Northern Bond & Mortgage Co.,* 161 Wash. 690, 297 Pac. 786.

We find no error, and the decree is affirmed.

BEALS, C. J., MITCHELL, STEINERT, and BLAKE, JJ., concur.