412 P.2d 586

MERIDIAN BOWLING LANES, INC., a corporation, Plaintiff-Appellant,

v.

T. C. BROWN and Evelyn Luis, Administratrix of the Estate of James Luis, Deceased, Defendants-Respondents.

No. 9604.

Supreme Court of Idaho.

March 28, 1966.

Clemons, Skiles & Green, Boise, for appellant.

Hawley, Troxell, Ennis & Hawley, Boise, for respondents.

SPEAR, Justice.

This action was instituted by appellant for a determination that a land sale contract (a contract of sale and purchase of improved real estate) was in fact a security transaction, and for the recovery of alleged usurious interest plus the statutory penalty. The matter was tried before the lower tribunal, sitting without a jury, and judgment was entered for the respondents, and the complaint dismissed with prejudice. Such judgment is here appealed.

The only question on appeal is whether the transaction entered into by the parties constituted a loan or a purchase and sale of property.

Early in 1959 Eugene J. Quintieri became interested in constructing a bowling alley in Meridian, Idaho. At that time, and for approximately fourteen years, Quintieri had been a manager of the Beall Pipe and Tank Corporation, a substantial business in Boise, Idaho. Quintieri investigated the feasibility of such a venture, and made preliminary inquiries concerning acquisition of land and bowling equipment, and the construction of a building suitable for a bowling alley. In March, 1959, appellant corporation was formed for the purpose of erecting and operating the proposed bowling establishment, with Quintieri as president and principal shareholder. In furtherance of the corporate purposes, appellant attempted to acquire from the Meridian Athletic Association a parcel of land upon which to erect the bowling alley, and proposed to pay for the land by transferring 30 shares of its capital stock (par value $100 per share, for the total value of $3000) to the Meridian Athletic Association in payment for the land. The Association accepted this offer, subject to the condition that if appellant did not construct a bowling alley on such property the Association reserved the right to return the stock to appellant and retain the property. In compliance with this arrangement 30 shares of capital stock in appellant corporation were transferred · to the

Meridian Athletic Association. The Association had a warranty deed prepared conveying the land to appellant, but the deed was never executed (being merely attested to by the Secretary but not signed by any authorized officer) and was never delivered to appellant. In furtherance of the bowling alley venture, appellant, through Quintieri, secured from Wise-Varner Builders, Inc., building plans and a proposal for the construction of the bowling alley, as well as other proposals for the wiring of the building, air-conditioning and the construction of a public address system. Quintieri had previously contracted for the purchase of bowling fixtures and equipment. Quintieri, representing appellant, encountered difficulty, however, in attempting to obtain financing for the construction of the building. He tried to borrow the necessary funds from banks but found these institutions were unwilling to lend money for the construction of a bowling alley. He then contacted real estate brokers, including Glen E. Green, who brought Quintieri into contact with respondents.

Respondent Brown was a Boise business man, engaged in the business of manufacturing pumice block and the wholesale of building supplies. He also did some independent construction work. Luis, the other respondent, was a retired restaurateur and delicatessen owner, and since his retirement had built and sold, on contract, several buildings. Neither of respondents were in the business of lending money nor, prior to this transaction, had they ever made loans secured by real estate.

There is a definite conflict in the evidence at this point. Quintieri testified that he proposed borrowing $45,000 from respondents for appellant corporation. Respondents deny this, and testified the only matter discussed was the building of a bowling alley on property to be acquired by them near Meridian, Idaho, and a sale of the improved property to appellant. After several meetings an attorney was contacted by respondent Brown, and a conference was arranged with the attorney, Quintieri, Brown and Luis. The attorney was advised by all the parties that a purchase and sale agreement was desired and no mention was ever made of a loan between the parties. As a result of the prior negotiations between Quintieri and respondents, and the conference with the attorney, the document in issue here was regularly executed on April 27, 1959 (Plfs. Exh. No. 7). It is entitled "Land Sale Agreement" and on its face amounts to a straightforward purchase and sale agreement. Under its terms respondents agreed to construct a bowling alley on certain described land (being the same land the Meridian Athletic Association had previously agreed to transfer to appellant) and to sell the land and building to appellant. Appellant, as purchaser, agreed to pay $3000 at the time of the ex-

ecution of the agreement; $15,628 into escrow at the time of the execution of the agreement, to be delivered to respondents, as vendors, when the building was two-thirds completed; and a balance of $64,650 with accruing interest at 8% per annum in 144 monthly installments of $700.16 each. Title was to be retained by respondents until all payments had been made, but possession of the land and building was to be given appellant on substantial completion of the building. Pursuant to this transaction, a new deed was regularly executed and delivered by the Meridian Athletic Association transferring the land to respondents. Consideration for this transfer was the sum of $3000. Appellant made a down payment of $3000 at the time of the execution of the agreement with respondents; concurrently respondents paid the Meridian Athletic Association $3000 for the deed to the land and the Association in turn paid $3000 to appellant for the 30 shares of capital stock in appellant corporation, which shares have been retained by the Association and used for collateral for loans.

Concurrent with the execution of the land sale agreement respondents entered into a building contract with Wise-Varner Builders, Inc., whereby the latter agreed to construct the same building it had proposed to construct for appellant at approximately the same price—$60,628. Respondents borrowed from a third party $45,000 to pay on the construction of the building. This was evidenced by a note secured by a mortgage on the property, and was to be repaid in 144 monthly installments.

During the construction of the building respondents took no active part in supervising or inspecting the work, but Quintieri maintained an active interest in the construction. It became necessary to acquire an additional strip of land to insure adequate access to the building, because the building was not properly located on the real property. This was the fault of appellant and Wise-Varner Builders, Inc. Quintieri handled the negotiations with the Meridian Athletic Association and secured from the association a deed to respondents for the additional strip of land.

Construction of the building was completed and possession delivered to appellant in July, 1959. From then until the time of trial appellant operated a bowling alley on the premises, and continued to make all monthly payments provided for under the agreement. However, early in 1962 appellant notified respondents it was suffering financial difficulty in connection with the operation of the bowling alley and requested a modification in the contract payments. No modification being agreed to by respondents, this action was instituted by appellant on August 7, 1962.

Having heard all of the testimony, including the foregoing facts, having weighed

410

the conflicting evidence, having personally observed the witnesses and determined the credibility to be given their testimony, and from the inferences and implications derived from such evidence the trial court further found and concluded that at the time appellant delivered thirty shares of its stock to the Meridian Athletic Association it acquired an equitable interest in the land involved; that the agreement between appellant and the association was conditional and not conclusive and binding since it was contingent upon the construction of a bowling alley upon the property; and that appellant was under no legal obligation to construct such a building and, likewise, the association was under no obligation to deed the real property to appellant, absent the construction of such an improvement upon the property.

The lower court further found and concluded that if appellant were unable to finance the construction of a bowling alley, it was not faced with the possibility of suffering any appreciable loss other than the anticipated profits from a speculative venture; that appellant was not a necessitous debtor, nor did appellant shift its position and become an executory purchaser subject to an absolute promise to pay an increased amount over what it had previously owed as a condition to return of the title to appellant; that in the transaction appellant was to receive back considerations over and above those with which

it parted inasmuch as the bare land in which it had an equitable interest prior to the transaction with respondents was repurchased from respondents with a building constructed thereon at a cost of $60,628; that appellant therefore was acquiring new property in which it had no prior interest; and that the equitable or conditional prior interest of appellant in the bare land was incidental only to its main speculative purpose of constructing and owning a bowling alley. The lower court further found no pre-existing debt owed by appellant to the respondents prior to this transaction, which debt appellant continued to owe either to the same or to a new creditor after this transaction was consummated. The court further found and concluded that appellant was an entrepreneur desiring to engage in a speculative business venture without the necessary capital therefor; that respondents were unwilling to make a loan to supply the necessary capital; but respondents were willing to, and in fact did, acquire title to the land, construct a building thereupon for the purpose of appellant, and sold the package (land and new building) to appellant at arms' length under a valid contract of sale and purchase.

The lower court further found and concluded that the parties intended and contemplated entering into a bona fide, valid purchase and sale agreement; and that it was not their intention, nor was it contemplated, that the transaction was a loan

of moneys by respondents to appellant. The lower tribunal further concluded that the usury law of the State of Idaho, I.C. § 27-1907, has no application to this transaction between the parties; that appellant had not sustained its required burden of proof to show with reasonable certainty that the Land Sale Agreement (a contract of sale and purchase) was anything other than what it purported to be upon its face; that, therefore, appellant's complaint should be dismissed with prejudice and respondents awarded their costs.

Judgment was regularly entered for respondents in accordance with such findings of fact and conclusions of law.

■ In its appeal appellant lists twenty-two assignments of error. The first twelve attack all but five of the lower court's findings of fact, on the basis that such findings are either contrary to, or not supported by, the evidence. The ruling of long standing in this court that:

"Where the findings of the trial court are supported by substantial and competent, though conflicting, evidence, such findings will not be disturbed on appeal."

disposes of these assignments of error. Edgeller v. Johnston, 74 Idaho 359, 262 P.2d 1006; Freedman v. Hendershott, 77 Idaho 213, 290 P.2d 738; Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630; Jackson v. Blue Flame Gas Co., 90 Idaho 393, 412 P.2d 418.

■ Additionally, the trial judge is the arbiter of conflicting evidence; his determination of the weight, credibility, inference and implications thereof is not to be supplanted by this court's impressions or conclusions from the written record. Sellars v. Sellars, 73 Idaho 163, 248 P.2d 1063; Fish v. Fleishman, 87 Idaho 126, 391 P.2d 344; Jackson v. Blue Flame Gas Co., supra.

In the next five assignments of error appellant contends that none of the conclusions of law reached by the trial court were supported by evidence and that all of them are contrary to law.

In the final five assignments of error appellant contends that the judgment is contrary to the evidence, is not supported by the evidence, and is contrary to law; that the court erred in not finding the transaction between the parties was in fact a loan; that the court erred in not finding the amount of interest called for by the contract, and that error was committed by the lower court in failing to find that appellant was entitled to judgment, and in failing to enter judgment for appellant.

Thus the last ten assignments of error actually raise only one contention by appellant, i. e., that under the facts and circumstances disclosed by the evidence in this case the court should have concluded the transaction between the parties was a loan, not a contract of sale and purchase, and made a determination of the amount of usurious interest charged in the trans-

**412**

action and entered judgment for appellant in the amount of such interest together with the statutory penalty attached thereto.

Two fundamental principles or theories of law must be considered in resolving this case.

■ The first is embodied in I.C. §§ 27–1905 and 27–1907 providing for the maximum rate of interest to be charged on loans and providing for the penalty for usury which is defined as:

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter, when knowingly done, * * *."

To constitute usury under these statutes there must be excessive interest or compensation on either a loan of money or forbearance or extension of time of payment on an existing debt. Freedman v. Hendershott, 77 Idaho 213, 290 P.2d 738; Bell v. Idaho Finance Co., 73 Idaho 560, 255 P.2d 715.

■ The second principle is that the owner of property, whether real or personal, has a right to name the price at which he is willing to sell, and to refuse to accede to any other, and if the transaction is a sale, and not a loan, usury cannot attach. Bell v. Idaho Finance Co., supra; Giometti v. Etienne, 132 Cal.App. 602, 23 P.2d 52 (1933).

■ In determining whether a particular transaction is a loan, a sale, or a sale and repurchase agreement the court is not bound by the type of instrument or form used by the parties in the transaction. Where the usury does not appear on the face of the instrument the court has the right to consider all the facts and circumstances to determine the real nature of the transaction, and if it is determined that the contract or form used was merely a device to cover up usurious interest charged for a loan or is merely a cloak to cover up a scheme or plan to collect usurious interest, the court will not hesitate to pierce the veil of any such device or plan to evade the usury law. Freedman v. Hendershott, supra; Milo Theater Corp. v. National Theater Supply, 71 Idaho 435, 233 P.2d 425; Milana v. Credit Discount Co., 27 Cal. 2d 335, 163 P.2d 869, 165 A.L.R. 621 (1945).

■ In applying these principles the authorities seem to be hopelessly irreconcilable, and each case must be decided upon the peculiar and particular facts involved.

■ Here we have parties of equal bargaining power. Quintieri, who was the president and substantial stockholder of the appellant corporation, represented the appellant in all its dealings with respondents. Thus on both sides we have parties who were intelligent, successful business men of long experience, who were highly competent to deal, and dealt at arms' length. There are no professional lenders of money involved, nor do we have a necessitous

debtor who was practically helpless against the usurious demands of a money lender. At the time of the transaction there was no debt owed by appellant to respondents or even to a third party. If the transaction had not been consummated, appellant stood in no position of suffering appreciable loss except the anticipated profits from a speculative business venture. Here there is no shift in position by appellant from a debtor-owner to an executory purchaser subject to an absolute promise to pay an increased amount. Appellant did not own the property prior to this transaction but had only a conditional equity therein, i. e., the right to title as, if and when a bowling alley was constructed thereupon. Additionally, here the appellant purchased different and new property. Prior to the transaction it had only a conditional, contingent equity in bare land. By terms of the contract appellant was given the right to acquire title to the real property with a bowling alley constructed thereon.

We have here a transaction of the capitalist assisting a businessman in financing a speculative business venture in which the businessman-purchaser anticipates great profits. Such a transaction entered into by parties of equal bargaining power who have dealt with each other at arms' length in the negotiations for such transaction and who knowingly intend to make a sale-purchase agreement instead of a loan, shall be construed as the parties intended, i. e., a

land sale agreement. Stark v. Bauer Cooperage Co., 3 F.2d 214 (6th Cir. 1925), cert. denied 267 U.S. 604, 45 S.Ct. 464, 69 L.Ed. 809 (1925); Bell v. Idaho Finance Co., supra; Batchelor v. Mandigo, 95 Cal.App. 2d 816, 213 P.2d 762 (1950); Wooton v. Coerber, 213 Cal.App.2d 142, 28 Cal.Rptr. 635 (1963); Giorgi v. Conradi, 199 Cal.App. 2d 82, 18 Cal.Rptr. 588 (1962).

The fundamental rule followed in these authorities is best expressed in, and often quoted from, Stark v. Bauer Cooperage Co., supra, and is as follows:

"An impecunious but optimistic speculator, who finds a property for sale at such a bargain price that he sees a profit of 200 per cent. if he could buy it and hold it awhile, hurries to a moneyed friend, explains the situation, and says, 'If you will buy this from the present owner, and then sell it to me on five years' credit, I will buy it of you at an advance of one-third over what you pay, and make my interest-bearing purchase contract and notes for that total sum.' The friend agrees, and it is done. Later the buyer concludes that the transaction was a usurious loan to him. * * * [3 F.2d at 214]

\* \* \* \* \* \*

"So far as we can find, every case in which the existence of an absolute promise by an ostensible vendee to pay the sum involved has been thought to indicate that the transaction was merely a loan

instead of having the character in which it was made to appear, is a case where the contract vendee had parted with his recent title and was arranging to get it back again. In no case was the contract one for the purchase of property which he had never before owned.

"In this class are the numerous cases in which it appeared that the owner, perhaps of real estate or perhaps of the accounts receivable in a going business, was hard pressed for funds to save or to benefit his property, and thereupon went through more or less complete forms of selling his property to another and simultaneously agreed to buy it back at an advanced price. It is not important whether the papers show on their face that this agreement for a repurchase exists or whether that is shown by parol; in either case, in construing the contract, it has seemed that the capital advanced was really a loan secured by the property conveyed, and the capital-recipient's absolute obligation to repay has cut a figure in bringing this conclusion; non constat that the same rule applies when the first and only conveyance is a contract of sale from the one who was furnished the capital and running to a stranger, or when at the beginning of negotiations, the final contract vendee does not own the property, but covets it, and is not hard pressed but avaricious." 3 F.2d at 216.

This principle is applicable to the facts of the case before us.

Another general principle stated as,

"The usury law is to be used as a shield and not as a sword."

is applicable here. Wooton v. Coerber, supra; Haines v. Commercial Mortgage Co., 200 Cal. 609, 254 P. 956, 960, 255 P. 805, 53 A.L.R. 725 (1927).

■ ■ Additionally, to have prevailed in the trial court on the merits in this action appellant had the burden of proving clearly and convincingly that the land sale agreement, lawful on its face, was not what it purported to be, but was a disguise to hide usury. Bell v. Idaho Finance Co., supra; Olson v. Caufield, 32 Idaho 308, 182 P. 527; Cowles v. Zlaket, 167 Cal.App.2d 20, 334 P.2d 55 (1959); Hoffman v. Graaf, 179 Wash. 431, 38 P.2d 236 (1934). Appellant did not meet this burden of proof.

■ Appellant's counsel urges in his brief that if this court fails to pierce the veil of the transaction here involved, the usury statutes of Idaho are for naught and may as well be discarded. In oral argument he contended that unless the trial court were reversed in this case, there would be an "open season on borrowers" in the State of Idaho. This contention is best met by the court in Stark v. Bauer Cooperage Co., supra, in holding:

"We do not share the apprehension of Bauer's counsel and of the court below that, if this contract stands as written,

a highway is pointed out to evade the beneficent purpose of the usury law. That purpose is to protect the necessitous debtor against extortion which he is practically helpless to resist. To adapt the usury laws to any other purpose is to distort them; and to carry them beyond their self-declared limits, through some vague thought of their spirit, is to take undue liberty. They select the rate with no regard to specific benefits or burdens, and they select their beneficiary by using the word 'loan.' The owner of a valuable equity who deeds it and takes back an optional right to redeem in one year at a 20 per cent. profit is, practically, more oppressed and under a greater pressure to pay than if he gave his absolute but unenforceable promise to redeem a doubtful equity at 10 per cent. interest; yet the latter is usury * * * and the former is not; and the reason it is not is because there is no loan. So, we think that when the capitalist and speculator have no existing relations and the speculator has no interest in a property for sale, the agreement that the capitalist will buy the property and carry it for the other and that the speculator will buy it from him at a fixed price is not, ipso facto, a loan." 3 F.2d at 219.

However, when the facts justify it, this court will never hesitate to pierce a devious device or form which seeks to circumvent the usury law for a loan just as this court has done consistently in the past. Milo Theater Corp. v. National Theater Supply, supra; and Freedman v. Hendershott, supra.

The lower court was correct in finding and concluding that the land sale agreement entered into by the parties was a sale and purchase contract and not a loan. This eliminates any necessity for a determination of the amount of the interest charged, for the usury statute is not applicable.

Judgment affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.