THE SWAMP LOAN AND TRUST COMPANY v. FLORA E. YOKLEY ET AL.

(Filed 21 November, 1917.)

**1. Usury—Statutes.**

An express or implied loan, upon the understanding that the money shall be returned, at a greater interest rate than the statute allows, whatever the form of the transaction, and with corrupt intent on the part of the lender, is usury, under our statute, the corrupt intent consisting in "taking, receiving, reserving, or charging" a greater rate than that allowed by law. Revisal, sec. 1951.

**2. Same—Commissions—Banks and Banking—Certificate of Deposit—Trials —Evidence.**

Under an agreement made with a bank, an insurance company deposited money upon a 6 per cent certificate of deposit; which the bank loaned to its customer upon his note, bearing the legal rate upon its face, which was

pledged to the insurance company as additional collateral to its certificate. The bank charged its customer a greater rate of interest than allowed by statute (Revisal, sec. 1951), in which the insurance company did not participate, looking only to the bank for the rate of interest stated on the certificate. In an action on the note the maker pleaded the usury statute, the plaintiff bank claiming the difference as its commission in negotiating the loan: *Held*, the transaction between the bank and its customer was usurious, as a matter of law.

3. **Usury—Statutes—Commission—Evidence—Trials—Questions for Jury.**

Where, in an action upon a note, the defendant pleads the usury statute (Revisal, sec. 1951), and the evidence is sufficient to sustain a verdict that the excess of interest was a proper charge made for negotiating the loan, the question should be submitted to the jury.

4. **Appeal and Error—Instructions—Reference—Findings—Trial by Jury— Waiver.**

Where instructions of the court to the jury are excepted to, and the case referred, a new trial will not be granted on appeal, for error, when it appears that the facts found by the referee, upon sufficient evidence, covered this phase of the controversy, the report confirmed by the judge, and the right to a trial by the jury waived by the party in failing to demand it in proper time.

5. **Reference—Exceptions—Trial by Jury—Waiver.**

A party who has excepted to the report of a referee may not have the judge pass upon his exceptions, without objection, and then demand that proper issues covering his exceptions be submitted to the jury for determination if the decision is unfavorable, for such is a waiver of his constitutional right thereto.

6. **Judgments—Estoppel—Bills and Notes—Separate Transactions.**

Where notes are given in different and unconnected transactions between the same parties, a judgment in an action on one of them is not an estoppel to an action on the other; and the same is true when the benefit from the only matter involved in both is disclaimed by the party sought to be estopped, and the former judgment amply protects the party setting up the estoppel.

APPEAL by plaintiff from *Webb, J.*, at May Term, 1917, of UNION.

This is an action on a note executed by the defendants to the plaintiff, Savings, Loan and Trust Company.

The defendant relied on the plea of usury.

The plaintiff filed a reply to the answer of the defendants, in which it, in substance, alleged that the loan to the defendants was made by the Security Life and Annuity Company, and that the plaintiff negotiated the loan and charged 1 per cent as commissions therefor.

The action came on for trial at August Term, 1916, when the following verdict was returned by the jury:

1. Was the loan represented by the note sued on in this action made to the defendants by the Security Life and Annuity Company? Answer: No.

2. Are defendants estopped to maintain the defense asserted in this action by reason of the defense pleaded in another action between the same parties? Answer: No.

The verdict was returned under an instruction from his Honor directing them to answer both issues in the negative if they believed the facts testified to by the witnesses, to which the plaintiff excepted.

His Honor, then, over the objection of the plaintiff, made an order of compulsory reference to state the account between the plaintiff and the defendants.

The referee appointed in the order, after hearing evidence for the plaintiff and the defendants, made his report to a subsequent term of the court, in which he found the facts as contended for by the plaintiff.

The defendant filed exceptions to said report. The exceptions were heard and were sustained, the judge finding the facts as contended for by the defendants.

The plaintiff moved for a confirmation of the report of the referee, but stated that if the report was not confirmed it desired to note exceptions and formulate an issue or issues to be submitted to a jury.

There was no objection made to the court hearing and passing upon the exceptions of the defendant to the report, nor did the plaintiff tender any issues upon the exceptions, nor ask for any issues to be submitted to a jury until after the judge had heard and passed upon the exceptions.

At a subsequent term of the court the defendants moved for judgment upon the record, and the plaintiff requested that certain issues be submitted to the jury. His Honor granted the motion of the defendants and entered judgment in their favor, to which the plaintiff excepted and appealed.

*Redwine & Sikes* for plaintiff.
*Stack & Parker* for defendants.

ALLEN, J. "In order to constitute a usurious transaction, four requisites must appear: (1) There must be a loan, express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and (4) there must exist a corrupt intent to take more than the legal rate for the use of the money loaned. . . . A profit greater than the lawful rate of interest, intentionally exacted as a bonus for the loan of money, imposed upon the necessities of the borrower in a transaction where the treaty is for a loan and the money is to be returned at all events, is a violation of the usury laws, it matters not what form or disguise it may assume." *Doster v. English,* 152 N. C., 341, approved in *Monk v. Goldstein,* 172 N. C., 519.

The corrupt intent consists in knowingly "taking, receiving, reserving, or charging a greater rate of interest than 6 per centum per annum" (Revisal, sec. 1951; *McRackan v. Bank,* 164 N. C., 26); and "Where there is negotiation for a loan of money, and the borrower agrees to return the amount advanced at all events, it is a contract of lending; and however the transaction may be shaped or disguised, if a profit or return beyond the legal rate of interest is intended to be made out of the necessities or improvidence of the borrower, or otherwise, the contract is usurious." *McRackan v. Bank, supra.*

Applying these principles to the evidence, we are of opinion his Honor held correctly, that in any view of the evidence the plaintiff, the Savings, Loan and Trust Company, made the loan to the defendants, and not the Security Life and Annuity Company, and that the transaction is usurious.

The evidence shows that the defendants applied to the annuity company and were refused the loan; that the annuity company then agreed to advance the money to the trust company to be lent to the defendants upon condition that the trust company would issue to the annuity company a certificate of deposit for the amount and attach the note of the defendants as collateral; that, pursuant to this agreement, the money was sent to the trust company, and the certificate of deposit and the note executed and delivered; that the note was payable to the trust company; that an agreement for extension of time was made with the trust company; that renewal notes were excepted to the trust company; that all payments made by the defendants were made to the trust company; that the trust company entered the transaction on its books, and while it at first charged the excess over 6 per cent as commissions, it afterwards charged it as interest; and that the defendants at first paid to the trust company 7 per cent on the loan, and afterwards 8 per cent.

Mr. Grimsley, an officer of the annuity company, who acted for the company in the transaction, testified, among other things: "I told them (defendants) we could not handle the paper they offered us; that we wanted to accommodate them, but I suggested that we could do it if they could get the Savings, Loan and Trust Company to handle it for them; we could take a certificate of deposit from the Savings, Loan and Trust Company at 6 per cent. We afterwards did that, made the deposit, and got the certificate, and we got the note of Payne and Kochtitzky *as further security."*

On cross-examination, he said: "When Kochtitzky came to see me, he wanted to borrow from us, but could not give proper security. He wanted to give personal security, and we wanted real-estate mortgage. We then proceeded to lend the money or deposit the money with the Savings, Loan and Trust Company and take a certificate of deposit from

the Savings, Loan and Trust Company. Then they made the loan to
Payne and Kochtitzky, taking Payne and Kochtitzky's note as collateral
security. In other words, we made the loan to the Savings, Loan and
Trust Company and took those certificates of deposit introduced in
evidence. When we collected interest from time to time we collected that
from the bank and made demand on the bank. Nothing was said to me
by the Savings, Loan and Trust Company as to what rate of interest they
were making the loan."

And, again, he said: "We never had any arrangements with Payne
and Kochtitzky as to what rate of interest they were to pay the Savings,
Loan and Trust Company. We never had any arrangements with Payne
and Kochtitzky as to the rate of interest we were to receive. We didn't
look for interest from anybody but the Savings, Loan and Trust Com-
pany. When this certificate of deposit became due we did not make the
demand on the Savings, Loan and Trust Company. We carried it on for
some years. They got after Payne and wanted to collect from Payne,
and he came to us and wanted us to deposit more money with them, and
we did that, and they gave us the certificate of deposit."

Mr. Clark, cashier of the trust company, testified: "When the money
was sent down here and deposited, it was deposited in our bank by the
Security Life and Annuity Company, and we then issued a certificate of
deposit to them. Then we got Payne and Kochtitzky, and they gave
us a note.

The notes ran for twelve months. At the end of every twelve months
we had them give us a new note, and every one of them was made to the
Savings, Loan and Trust Company. We allowed the same certificate of
deposit to stay on, and did not give a new one. This note sued on is a
part of the original transaction."

Later, referring to the amounts collected by plaintiff from Payne and
Kochtitzky, he said: "In May, 1914, I quit calling one of them commis-
sions and called them both discounts. On 8 June, 1914, . . . we
charged them $83,43, at that time, as discount on the note sued on. It
is down here as discount. I think that figures out at the rate of 7½ per
cent. . . . 9 June, 1915, is the next entry—T. J. Payne, $141.66
twice. That was on this $2,500 note. That shows interest at the rate of
7½ per cent. We credited the Security Life and Annuity Company on
our books with $5,000, and issued a certificate of deposit for it."

One of the defendants testified: "We could not borrow the money
from the insurance company. We borrowed it from the plaintiff. Mr.
Grimsley said he would not lend the money without real-estate security."

Under this evidence, the money received by the defendants was the
property of the trust company, and as there was an agreement to repay,

37—174

it is a loan, and a greater rate of interest than 6 per cent being reserved, it is usurious.

If the transaction was of doubtful character, we would agree with the plaintiff that it ought to have been submitted to the jury, and if made to appear that the trust company was doing no more than charging a reasonable commission for negotiating a loan made by the annuity company, would uphold it, but this is not a reasonable inference, from the evidence.

If, however, the instruction of his Honor was erroneous and the verdict should be set aside, the plaintiff would be in no better position, because his Honor found the facts against the plaintiff on exceptions to the report of the referee, and these facts are sufficient to support the judgment. He made the following rulings and findings, which appear in his judgment:

"Defendants' objections and exceptions to finding of fact No. 3 is allowed, and the finding stricken out and the following substituted therefor: 3. On or about 3 March, 1910, the Security Life and Annuity Company deposited $5,000 in the Savings, Loan and Trust Company, for which it received a regular certificate of deposit, bearing interest at 6 per cent per annum. The plaintiff made a loan of $5,000 to O. W. Kochtitzky and T. J. Payne, taking their note for said amount, with W. C. Heath as endorser, said note bearing interest at 6 per cent from date on its face, but 7 per cent interest being in reality charged and collected thereon, per annum, by the plaintiff. The latter deposited this note with the said insurance company as collateral to the said certificate of deposit.

"The findings of fact, as they stand, under these rulings, and amendments, are to the effect that plaintiff made the loan, a part of the time at 7 per cent interest per annum, a part at 8 per cent; that such rate of interest was paid, and giving the respective amounts, in dollars."

These findings of fact are supported by evidence and are conclusive upon us, and the plaintiff waived his right to have a jury trial upon them by failing to demand a jury upon the exceptions.

The plaintiff could not take its chance with the judge for a favorable decision, thereby consenting that he should hear the exceptions, and then ask for a jury trial if the decision was unfavorable.

The question was passed upon and decided in *Robinson v. Johnson,* at this term, in which, upon a similar state of facts, the Court says: "Plaintiffs have clearly waived their constitutional right to the trial of the issues in the case by a jury, as they failed to except to the referee's report, and did not tender any issues at all, not even on the defendants' exceptions. This was really tantamount to an agreement on their part that the judge should pass upon the defendants' exceptions without a jury."

We are also of opinion that the plea of estoppel cannot avail the plaintiff.

The parties in the former action were the same as in this, but the note sued on was a different one, and the transaction, so far as the records show, not connected with the loan in the present case.

The issues, therefore, were not the same, and the only reference in the former action to any item or fact in this is as to an item of $812.12, and the defendants in the present action stated at the trial of the issues that they did not ask any recovery on account of this item, and the possibility of any benefit therefrom is provided against in the judgment.

We find no error.

Affirmed.