661 P.2d 729

**Anne T. HOWES, Plaintiff-Counter-defendant-Respondent, Cross-Appellant,**

v.

**Carl CURTIS, Defendant-Counter-claimant, Third-Party Plaintiff, Appellant and Cross-Respondent,**

v.

**James B. DONART, Third-Party Defendant and Respondent.**

No. 13760.

Supreme Court of Idaho.

March 24, 1983.

E. Lee Schlender, Ketchum, for Carl Curtis.

Paul M. Beeks, of Smith & Beeks, Twin Falls, for Anne T. Howes.

John P. Howard, of Quane, Smith, Howard & Hull, Boise, for James B. Donart.

DONALDSON, Chief Justice.

The controversy which comes before the Court on this appeal had its beginning in a loan transaction involving the plaintiff, Anne T. Howes, and the defendant, Carl Curtis.

Howes, who owned a lounge in Hailey, Idaho, found herself in financial straits and needed to secure a loan of about $35,000.00. Howes arranged for a loan with Curtis, a self-professed mortgage banker, financier and real estate investor who had made similar loans in the past. Curtis charged a 5% finder's fee and a 5% loan payment guarantee fee based on the loan.

The necessary financing and loan paperwork was prepared by the third-party defendant, James B. Donart, acting as Howes' attorney. This paperwork was executed on January 27, 1977. Among the papers was a promissory note which was filled out as a result of advice from Curtis and which had a face amount of $48,750 payable in monthly installments with 10% interest on deferred payments with a final balloon payment to pay the note in full one year later. At the instruction of Curtis, another person was used in the transaction by the third-party defendant as an intermediary between Curtis and Howes. This person was Howes' sister. The sister was given a trust deed on Howes' real property (the lounge), a security interest in Howes' personalty including her beverage licenses, and the promissory note signed by Howes. Upon execution of the loan papers, Curtis credited a fictitious prepayment of one year's principal and interest upon the promissory note. Howes received $35,000.00 and was to repay $44,666.03. The sister then assigned the deed of trust, the security agreement and the note to Curtis.

After default occurred on the note, Curtis foreclosed on the trust deed. Thereafter, following a trustee's sale, a trustee's deed which recited a consideration of $47,526.48 was issued to Curtis.

Sometime later, Howes filed suit against Curtis seeking to recover immediate possession of the beverage licenses, her personalty, and past and future damages resulting from the deprivation of her possession. Howes also sought an order directing Curtis to satisfy of record the financing statement filed in connection with the security interest. By an additional count, Howes sought from Curtis the statutory penalty for collecting usurious interest. Curtis counterclaimed and filed a third-party complaint against Donart. After a trial before the court, findings of fact and conclusions of law were entered. The trial court found the loan agreement to be usurious.

Appellant Curtis attempts to raise four issues on this appeal: (1) would the disclosure of the total amount of interest charged satisfy the statutory requirement that the "rate of interest charged" be disclosed, (2) is there any evidence in the record to support the finding of the trial court that appellant Curtis knew that he was charging interest greater than that permitted by law, (3) is the owner's opinion as to value of property admissible when it is based entirely upon hearsay, and (4) is an attorney subject to liability for injury to a nonclient third-party? On cross-appeal, respondent-cross-appellant Howes attempts to raise three additional issues: (1) did the trial court err in computing the amount of interest charged by appellant by improperly deducting the 5% finder's fee and the 5% loan payment guarantee fee, (2) did the trial court err in failing to award to plaintiff judgment for an additional sum of $256.55 which represented the excess bid on the foreclosure sale for the trustee's fees over the trustee's fees actually incurred, and (3) should additional punitive damages be assessed against the appellant on appeal? Additionally, all parties have requested attorney fees on appeal.

## I.

### A. Disclosure of rate of interest.

For many years Idaho has had usury statutes. Among the statutes relevant to this cause is a provision concerning the maximum legal rate of interest. This statute provided at the time of the loan transaction that under certain conditions

"parties may agree in writing which clearly sets forth the rate of interest charged, to pay any rate of interest in excess of the maximum rates [ten per cent (10%) per annum] provided in this section on money due, or to become due, or on any extension or renewal thereof, if:

(a) the contract is not subject to the rate limitations of the Uniform Consumer Credit Code; and

(b) the original indebtedness to be repaid is not less than twenty-five thousand dollars ($25,000) . . . .

On any obligation complying with the provisions of paragraphs (a) and (b) above the claim or defense of usury by the obligor . . . is prohibited." 1976 Idaho Sess. Laws ch. 126, p. 475, 476 (current version at I.C. § 28–22–105).

Appellant contends that usury is unavailable as a claim or defense because the loan at issue disclosed the total amount of interest and therefore complied with the statutory conditions of former I.C. § 28–22–105. We are unconvinced.

Because the issue of usury does not appear on the face of the note, it was necessary for the trial court to "take into account all of the circumstances surrounding the transaction." *D & M Development Co. v. Sherwood and Roberts, Inc.,* 93 Idaho 200, 207, 457 P.2d 439, 446 (1969); *Meridian Bowling Lanes, Inc. v. Brown,* 90 Idaho 403, 412 P.2d 586 (1966); *Milo Theater Corp. v. National Theater Supply,* 71 Idaho 435, 233 P.2d 425 (1951); *Olson v. Caufield,* 32 Idaho 308, 182 P. 527 (1919). *See also Boyd v. Head,* 92 Idaho 389, 443 P.2d 473 (1968). The trial court found with respect to the loan that the parties did not agree in a writing which clearly set forth the rate of interest charged. This finding is supported by substantial and competent evidence and will not be disturbed. The promissory note as executed reflected a face amount of $48,-750.00 and set forth the interest rate as 10%

per annum from the date of execution. As amended at some point, the note reflected a remaining balance of $44,666.03. From the evidence, the trial court found that the basic loan made from Curtis to Howes was $35,000.00. In such a posture, the note lost efficacy as a valid disclosure of the rate of interest which would bar the issue of usury. Only by reference to extrinsic evidence could the total amount of interest charged or the rate of interest be determined. Therefore, the disclosure did not comport with the statutory condition requiring a writing which clearly sets forth the rate of interest charged, 1976 Idaho Sess. Laws ch. 126, p. 475, and a claim of usury could be properly raised. Furthermore, the insufficiency of the disclosure established, as a matter of law, that the maximum legal rate of interest applicable to these circumstances would be 10% per annum. *Id.*

B. *The element of intent with respect to usury.*

The Idaho usury law provides that when a transaction is determined to be usurious then statutory relief from the usury may be accorded the injured party. I.C. § 28–22–107 provides the statutory framework by which usury is determined and also provides for the forfeiture of interest and penalties when a person *knowingly* takes, receives, reserves or charges usurious interest.[1] We have expressed in numerous cases that one form of usury is excessive interest or compensation on a loan of money. *Transportation Equipment Rentals, Inc. v. Ivie,* 96 Idaho 223, 526 P.2d 828 (1974); *Meridian Bowling Lanes, Inc. v. Brown,* 90 Idaho 403, 412 P.2d 586 (1966); *Freedman v. Hendershott,* 77 Idaho 213, 290 P.2d 738 (1955); *Bell v. Idaho Finance Co.,* 73 Idaho 560, 255 P.2d 715 (1953).

"The usury rule is a harsh rule, but it is made for the beneficial purpose of protecting the necessitous debtor against extortion which he is practically helpless to resist. Such harshness appears to be the intent of the legislature as necessary to the elimination—or the holding to a minimum—of the exacting of usurious rates of interest." *Freedman v. Hendershott,* 77 Idaho 213, 219, 290 P.2d 738, 741 (1955); *see also Bethke v. Idaho Savings & Loan Association,* 93 Idaho 410, 414, 462 P.2d 503, 507 (1969).

 The trial court finding that appellant Curtis "knew this loan exceeded the statutory interest maximum" has been challenged by the appellant as not supported by the evidence. Our standard when considering such a challenge has long been that a finding supported by substantial, competent evidence despite conflicting evidence will not be disturbed on appeal. *E.g.,* I.R.C.P. 52(a); *Barnes v. Huck,* 97 Idaho 173, 177, 540 P.2d 1352, 1356 (1975); *Thompson v. Fairchild,* 93 Idaho 584, 468 P.2d 316 (1970). Appellant contends that there is no evidence in the record to support this finding and therefore it must be reversed. Appellant points to excerpts of his testimony to demonstrate that he had no knowledge that the loan was usurious. In the absence of other evidence, this argument might be convincing. However, it must be noted that this Court has previously held that even where there is uncontradicted testimony, if that testimony is by an interested party, a finding of fact contrary to that testimony is not necessarily reversible. *C.I.T. Corporation v. Hess,* 88 Idaho 1, 7–8, 395 P.2d 471, 474 (1964). Here, the trial court could properly weigh all the evidence and draw permissible inferences which would enable him to find that appellant knew the loan exceeded the maximum statutory interest rate. *See Olson v. Caufield,* 32 Idaho 308,

1. I.C. § 28–22–107 in pertinent part provides: "The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter, when knowingly done, shall be deemed a forfeiture by the person so taking, receiving, reserving or charging to the benefit of the person paying or being charged, of the entire interest which the contract carries with it or which has been agreed to be paid thereon, plus twice the amount of such interest. In case the greater rate of interest has been paid, the person by whom it has been paid . . . may recover back the amount of the interest thus paid from the person taking or receiving the same, plus twice the amount of such interest in addition."

312, 182 P. 527, 529 (1919) ("The fact at issue in such cases may be determined by inference from all the surrounding circumstances of the case, tending to show the real intent of the parties and the true nature of the transaction in question"). Under our prior usury cases, we have often held that this Court will not hesitate to look beyond the face of the instruments to determine whether the transaction is a mere device to avoid the usury statutes. *E.g., Buchanan v. Dairy Cows,* 97 Idaho 481, 482, 547 P.2d 526, 527 (1976); *Meridian Bowling Lanes, Inc. v. Brown,* 90 Idaho 403, 415, 412 P.2d 586, 593 (1966); *Freedman v. Hendershott,* 77 Idaho 213, 290 P.2d 738 (1955); *Milo Theater Corp. v. National Theater Supply,* 71 Idaho 435, 233 P.2d 425 (1951). Similarly the trial court must exercise the same watchful guard. Among the evidence which would support this finding would be the educational background and the business and real estate experience of the appellant. Evidence was before the trial court that appellant had been engaged in real estate transactions for twenty-five years and mortgage brokering for six or seven years. In *Bjornstad v. Perry,* 92 Idaho 402, 407, 443 P.2d 999, 1004 (1968) we stated that "[a] broker in this state who assists in securing or in making loans for others is bound to know of the existence and effect of our usury law."

■ The facts and circumstances could give rise to a permissible inference that the appellant in this transaction was attempting to disguise it to avoid the usury statute. In *Milo Theater Corp. v. National Theater Supply,* 71 Idaho 435, 233 P.2d 425 (1951), we held that while the defendant "may not have known the precise lawful rate of interest in Idaho, he knew [that the transaction] . . . was but a device to attempt to evade the usury laws of Idaho." *Id.* at 441, 233 P.2d at 428. Additionally, there were findings not disputed on appeal that Howes was in dire financial straits needing about $35,000 to pay outstanding obligations, that the actual amount loaned to Howes was $35,000, that the face amount of the one-year note was originally $48,750 (subsequently reduced to $44,666.03), that Curtis borrowed $35,000 from a bank for one year at 10% interest, and that after default of the note a trustee's deed was issued to Curtis which recited a consideration of $47,526.48.

From such unchallenged findings, our review of the record and our prior holdings, we affirm the trial court's determination of the usurious nature of the loan and with modification [2] the imposition of the statutory sanctions, I.C. § 28–22–107.

C. *The deduction of the 5% finder's fee and the 5% loan payment guarantee fee.*

■ Respondent raises as an issue the trial court's computation of the amount of interest charged by the appellant Curtis. Specifically, the respondent contends that the trial court erred by not including the 5% finder's fee and the 5% loan payment guarantee fee as interest charged and received. The trial court found that the appellant had communicated to the "plaintiff or her lawyer that he charged a 5% finder's fee and a 5% loan payment guarantee fee, based on the loan." The trial court determined that $9,026.48 was charged as interest on the loan of $35,000.[3]

In *D & M Development Co. v. Sherwood and Roberts, Inc.,* 93 Idaho 200, 207, 457 P.2d 439, 446 (1969), we considered a commitment fee as collateral to a loan and held that it did not constitute interest in the absence of evidence that the fee was "an

---

**2.** See parts I.c. and V, *infra.*

**3.** The trial court findings of fact reflect the trial court's computation:

| "Basic Loan | $35,000.00 |
|---|---|
| 5% finder's fee | 1,750.00 |
| 5% payment guarantee fee | 1,750.00 |
| Loan Obligation | $38,500.00 |

| Trust deed sale to Defendant in full payment | $47,526.48 |
|---|---|
| 505 days' Interest | + $ 9,026.48 |
| One year's Interest | $ 6,499.07 |
| 1/28/78 – 6/19/78 Interest | 2,527.41 |
| | 9,026.48 |
| Annual Rate, Interest | 16.88%" |

unfair or inadequate consideration for the commitment undertaken." The record in the *D & M Development* case revealed that economic advantage accrued to the party asserting the claim of usury unlike the situation here. In *Eagle Rock Corporation v. Idamont Hotel Co.,* 59 Idaho 413, 85 P.2d 242 (1938), this Court held that a transaction was not made usurious by a commission fee paid to third parties or by a charge made to cover a purchase of stock in the lender. There was adequate evidence in the *Eagle Rock* record to support the charges made unlike the situation here.

"Where the actual lender, in order to evade the usury statute, pretends to act as agent or broker, and exacts a commission for his supposed service in procuring the loan from a third person, the court, upon proof of the deceptive character of the transaction, will declare it usurious." Annot., 52 A.L.R.2d 703, 769 (1957).

We decline to permit in a case such as this a lender to charge the borrower a broker's fee where the lender is loaning his own money. *See Commercial Security Co. v. Holcombe,* 262 F. 657 (5th Cir.1920); *Richter Jewelry Co. v. Schweinert,* 125 Fla. 199, 169 So. 750 (Fla.1936); *State ex rel. Fatzer v. Miller,* 177 Kan. 324, 279 P.2d 223 (Kan.1955); *Commonwealth Farm Loan Co. v. Caudle,* 203 Ky. 761, 263 S.W. 24 (Ky.1924); *Hecker v. Putney,* 196 S.W.2d 442 (Mo.App.1946); *Savings Loan & Trust Co. v. Yokley,* 174 N.C. 573, 94 S.E. 102 (N.C.1917); *Greever v. Persky,* 140 Tex. 64, 165 S.W.2d 709 (Tex. 1942); *Richeson v. Wood,* 158 Va. 269, 163 S.E. 339 (Va.1932). *See also* Annot., 91 A.L.R.2d 1389 (1963).

The record and the unchallenged findings of the trial court reveal that the loan was made by Curtis to Howes. Curtis as a matter of law could act neither as a broker for nor as a guarantor to himself as lender. The judgment must be modified.

We reverse the allowance of these fees and hold that on the record disclosed on appeal and from our prior holdings that these fees constituted additional interest. *See D & M Development Co. v. Sherwood and Roberts, Inc.,* 93 Idaho 200, 457 P.2d 439 (1969); *Eagle Rock Corporation v. Idamont Hotel Co.,* 59 Idaho 413, 85 P.2d 242 (1938).

## II.

We next consider arguments concerning the admissibility of certain evidentiary exhibits. Appellant argues that the trial court erred by admitting exhibits of the plaintiff Howes as to the value of certain items of personalty. The basis for the argument was that the values in the exhibits were based upon hearsay; that the witness Howes by whose testimony the exhibits were admitted had no knowledge as to the value of the property. We find no error.

"It is settled rule in Idaho that the owner of property is a competent witness to its value, as he is presumed to be familiar with its value by reason of inquiries, comparisons, purchases and sales." *Weaver v. Village of Bancroft,* 92 Idaho 189, 193, 439 P.2d 697, 701 (1968); *Riley v. Larson,* 91 Idaho 831, 432 P.2d 775 (1967); *Rankin v. Caldwell,* 15 Idaho 625, 99 P. 108 (1908). Howes, as the owner, was competent to testify as to the value of her personalty. *Simpson v. Johnson,* 100 Idaho 357, 362, 597 P.2d 600, 605 (1979); *Bancroft v. Smith,* 80 Idaho 63, 323 P.2d 879 (1958). Furthermore, the competence of a witness is first determined by the trial court, *see, e.g., Clark v. Gneiting,* 95 Idaho 10, 501 P.2d 278 (1972), and based upon this record we do not discern any error in the admission of these exhibits based upon the competency of the witness.

## III.

We next review the appellant's contention that the trial court erred in its finding that the third-party defendant, attorney James B. Donart, had no duty to appellant Curtis. Curtis argues that Donart knew that the transaction was usurious, that Donart had a duty to inform Curtis of the transaction's usurious nature, and that Donart breached that duty. Curtis contends that Donart by allegedly failing to inform either Howes or Curtis of the transaction's usurious nature opened himself to liability. We disagree.

In light of our previous ruling affirming the trial court's finding that Curtis "knew this loan exceeded the statutory interest maximum," the argument by Curtis that error was committed with respect to a finding of no duty owed Curtis by Donart is without merit. Even assuming that a duty were owed, to recover for a breach of that duty, the breach of duty must be a proximate cause of the injury. The finding that Curtis knew that the loan exceeded the statutory interest maximum negates any element of proximate cause with respect to a breach of duty.

### IV.

The cross-appellant Howes seeks review of two additional issues: (1) whether the trial court erred in failing to award to plaintiff judgment for an additional sum of $256.55 which represented the excess bid on the foreclosure sale for the trustee's fees over the trustee's fees actually incurred and (2) whether this Court should assess additional punitive damages against the appellant Curtis on appeal.

Our review of the trial court findings of fact reveals that there is no merit to the cross-appellant's contention concerning trustee's fees. The trial court's determination of the interest considered the amount of $47,526.48 recited in the trustee's deed to the defendant as the total paid by Howes to Curtis and from that deducted the loan obligation to yield the interest charged.[4] Our examination reveals that cross-appellant has suffered no complainable injury with respect to trustee's fees.

The cross-appellant seeks an award of additional punitive damages on appeal because Curtis continues to interfere in her ownership of personal property and her beverage licenses. A party seeking an award of exemplary damages must raise such issue in the trial court and may not initially raise such an issue on appeal.[5] *See, e.g., Heckman Ranches, Inc. v. State,* 99 Idaho 793, 589 P.2d 540 (1979). It is not within our province as an appellate court to consider such an issue.

### V.

The judgment in favor of the respondent Anne T. Howes against the appellant Carl Curtis is modified to reflect the inclusion of the 5% finder's fee and the 5% loan payment guarantee fee as interest. *See Bjornstad v. Perry,* 92 Idaho 402, 406, 443 P.2d 999, 1003 (1968); *Petersen v. Philco Finance Corporation,* 91 Idaho 644, 653, 428 P.2d 961, 970 (1967). The trial court allowed $1750 as a finder's fee and $1750 as a loan payment guarantee fee. The respondent Howes is entitled to have the judgment increased by the sum of $3500 plus twice that amount. I.C. § 28–22–107. Simply stated the judgment must be increased against appellant Curtis by $10,500.

The judgment as modified is affirmed. Interest on the modified judgment will run from the time of entry of the original judgment. *See* Annot., 4 A.L.R.3d 1221 (1965).

Costs awarded to respondents Howes and Donart. Attorney fees are awarded respondent Howes with respect to her successful cross-appeal. Attorney fees denied all other parties.

SHEPARD and BISTLINE, JJ., and McQUADE, J., pro tem, concur.

BAKES, J., concurs in the result.

---

4. See note 3, *supra.*

5. This statement does not involve our power to award reasonable attorney fees on appeal. I.C. § 12–121; I.A.R. 41(c).