995 P.2d 351

Judy N. BROWNING and Frank Henry Browning, husband and wife, Plaintiffs–Appellants,

v.

Richard Ernest RINGEL and Ervin Meeks Logging Co., Inc., and Ervin Meeks, President of Ervin Meeks Logging, Co., Inc., an Idaho corporation which has forfeited its corporate charter in Idaho, and Nancy Lindstrom, Secretary of Ervin Meeks Logging Co., Inc., Defendants–Respondents.

No. 24698.

Supreme Court of Idaho, Coeur d'Alene, October 1999 Term.

Feb. 24, 2000.

Rehearing Denied March 17, 2000.

Mitchell Law Office, Coeur d'Alene, for appellants. John T. Mitchell argued.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for respondents. Warren E. Jones argued.

SILAK, Justice.

This is an appeal from a judgment entered after a bench trial, based on findings of fact and conclusions of law, awarding appellants damages arising out of a motor vehicle accident. Appellants claim that the district court erred as a matter of law in apportioning the damages between a pre-existing medical condition and injuries relating to the accident, and that certain of the court's findings of fact were not supported by substantial and competent evidence. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

#### A. Facts

On July 12, 1994, appellant Judy N. Browning (Browning), while operating her 1991 Chevrolet Blazer in the course of her employment as single copy manager for the *Coeur d' Alene Press,* was involved in a motor vehicle accident with respondent Richard Ernest Ringel (Ringel), who was operating a logging truck on behalf of his employer, respondent Ervin Meeks Logging Co., Inc. On that day, both Ringel and Browning were driving eastbound on Aqua Avenue near its intersection with State Highway 95 in Coeur d'Alene. When Ringel approached the intersection, he was stopped by a flagger and told that the intersection was closed by road crews for construction. Ringel could not proceed forward and had to back up to turn around. Browning had driven up behind Ringel and had stopped a few car lengths behind his truck, in Ringel's blind spot. After checking his mirrors and not seeing Browning, Ringel backed up his truck and collided into the front of Browning's Blazer.

At the time of the accident, Browning was 55 years old and had worked for the *Coeur d' Alene Press* for seventeen years. During the first twelve years of her employment, she

delivered 45 to 70 bundles of papers weighing 30 to 40 pounds each to stores and newspaper racks daily. In 1988, her job became more supervisory, but she still had to lift newspaper racks weighing up to 140 pounds, as well as bags of money weighing 40 to 50 pounds. Prior to the accident, Browning suffered from a number of pre-existing injuries and ailments.

After the accident, Browning experienced pain in her right shoulder and neck, increased pre-existing back pain and muscle tension headaches. In March 1995, Browning was taken off work by her physician due to the pain. In May 1996, an orthopedic surgeon, Dr. Pike, diagnosed Browning as having a partial rotator cuff tear. Browning had surgery to repair the torn rotator cuff in November 1996. In mid-January 1997, Browning returned to work full-time as an office clerk, and in July 1997, she was promoted to circulation office manager.

### B. Procedural Background

On March 7, 1996, Browning and her husband filed a complaint against Ringel and his employer for personal injury damages, property damages and for loss of consortium arising out of the July 12, 1994 accident. Following a bench trial in February 1998, the district court issued its findings of fact and conclusions of law.

The court made numerous findings of fact with respect to Browning's prior injuries. Certain of these are as follows: In October 1984, Dr. Don Schmitt treated Browning for severe low back spasms which a CT scan showed to be caused by mild to moderate degenerative changes in her lower lumbar spine and a bulging disc. In 1987, Dr. Schmitt treated Browning for anxiety headaches. In November 1988, Dr. Schmitt treated Browning for left shoulder and left arm pain. Dr. Schmitt diagnosed a cervical nerve root syndrome. Dr. Schmitt treated Browning again in August 1989 for worsening left shoulder pain. Dr. Schmitt then referred Browning to Dr. Lea, who in September 1989, treated Browning for neck and left arm pain which Browning stated was caused by lifting newspapers in the course of her work. An x-ray ordered by Dr. Lea showed degenerative changes of Browning's cervical spine and bone spurring. In October 1991, Dr. Schmitt treated Browning again for worsening low back and left elbow pain. An MRI showed a disc herniation which Browning believed was related to an injury she sustained in August 1991 while moving a paper rack in her employment. Dr. Fokes performed surgery on Browning in January 1992 for the herniated disc. Browning continued to have complaints of pain in her back and in her right leg prior to the accident in this case, and was seen again by Dr. Lea in June 1993.

The district court also made findings with respect to Browning's medical condition after the accident. Certain of these are as follows: In August 1995, Browning was seen by Dr. Fokes for complaints of numbness in her lower right extremity, but Dr. Fokes could not find any objective weakness or motor deficit, and an MRI indicated normal limits. At that time Dr. Fokes stated that from a neurosurgical standpoint he could see no reason why Browning could not return to work, although Browning stated she could not. Dr. Fokes recommended that "we have a panel and try and settle up with Mrs. Browning and let her get on with her life." In December 1995, Browning was examined by Dr. Powell and Dr. Bozarth with respect to her complaints of neck pain, right shoulder pain, low back pain and right leg numbness. These doctors concluded that her right shoulder strain was related to general work activities, rather than the motor vehicle accident involved in this case. They found no change in the previous impairment rating for the low back, that there was no impairment of function with respect to her cervical condition, no restrictions related to her neck, and concluded that x-rays indicated pre-existing arthritis in her neck prior to the accident. Dr. Pike, who performed the repair surgery, stated that the rotator cuff tear was due to degeneration and the accident, and that it was not possible to separate the two. In February 1997, Dr. Oeljen examined Browning and determined her right shoulder injury to be related to natural degeneration combined with her general work activities over the years moving heavy bundles of newspapers

and dispensing machines, and that it was not necessarily related to the accident. The court found that rotator cuff tears are often the result of natural aging and degenerative conditions, which was consistent with the fact that Browning did not need surgery on her right shoulder until more than two years following this accident.

The district court determined that with respect to the negligence issue, Ringel was 100% at fault. The court then stated that the difficulty with the case was apportioning causation of Browning's physical complaints between the accident and non-accident events. Because the court found it was more probable than not that Browning suffered some cervical strain, a rotator cuff injury, and some slight aggravation to the pre-existing low back injury as a result of the accident, it awarded Browning damages for medical expenses and loss of income in the amount of $32,000. The court also awarded the Brownings $3,447 for property damage relating to their vehicle, and $2,000 to Mr. Browning for loss of consortium. The court thus entered judgment in favor of the Brownings in the amount of $37,527.00. In May 1998, the court denied the Brownings' motion to alter or amend the court's findings of fact and conclusions of law. The Brownings appeal.

## II.

### ISSUES ON APPEAL

A. Whether the trial court erred as a matter of law, in apportioning damages for Browning's right shoulder and neck injuries caused by the accident and any pre-existing condition, when just prior to the accident neither her right shoulder nor her neck were painful or disabling.

B. If there is a legal basis for apportionment of her right shoulder and neck injuries, and whether there is substantial competent evidence from which to apportion Browning's damage between her pre-existing condition and the accident.

C. Whether there is substantial and competent evidence to support the court's finding that "[t]he combination of complaints arising out of non-accident events would have precluded plaintiff from performing the duties of single copy manager by no later than January 1997."

D. Whether there is substantial and competent evidence to support the court's finding that "[i]t was the entire constellation of the plaintiff's physical complaints from various causes which prompted her to abandon the job as single copy manager in March 1995."

E. Whether the trial court's finding that there was some "slight aggravation to the pre-existing low back as a result of the accident" is specific enough to determine how that fact entered into the court's findings on damages, and whether it is specific enough for meaningful appellate review.

F. Whether the court erred as a matter of law, by failing to award damages for wage loss during a period where Browning was recovering from a non-accident surgery (carpal tunnel), when she had already been taken off work for accident-related medical reasons.

G. Whether the court erred in not making a finding regarding the need and cost of housekeeping for Browning as a result of this accident, when uncontradicted proof of the need and cost was presented by the Brownings.

## III.

### STANDARD OF REVIEW

When an action is tried to a court sitting without a jury, appellate review is limited to ascertaining whether the trial court's findings of fact are supported by substantial and competent evidence. *See The Highlands, Inc. v. Hosac,* 130 Idaho 67, 69, 936 P.2d 1309, 1311 (1997); *Kootenai Elec. Co-op. v. Washington Water Power Co.,* 127 Idaho 432, 434, 901 P.2d 1333, 1335 (1995). Findings which are supported by substantial and competent evidence will not be set aside on appeal even though the evidence may be conflicting. *See The Highlands, Inc.,* 130 Idaho at 69, 936 P.2d at 1311. The trial

court's findings of fact will be liberally construed in favor of the judgment entered. *See Id.* "The credibility and weight given to the evidence is in the province of the trial judge as the trier of fact, and the findings made by the trial judge will not be set aside unless clearly erroneous." *Id.* This Court has free review over the trial court's conclusions of law and may draw its own legal conclusions from the facts presented. *See Id.*

## IV.

## ANALYSIS

**A. The Trial Court Did Not Commit Legal Error In Apportioning Damages For Browning's Right Shoulder And Neck Injuries, Between Injuries Caused By The Accident And Her Pre–Existing Conditions, Even Though She Was Not Symptomatic Immediately Prior To The Accident.**

■ Browning argues that the trial court should not have apportioned damages for her right shoulder and neck injuries between injuries caused by the accident and any pre-existing condition. Browning's argument is based on Idaho Civil Jury Instructions 939 and 940 (1987), concerning "Aggravation of Pre-existing Conditions" and "Previous Infirm Condition," respectively.[1] Both instructions direct the jury to apportion damages, "if possible, between the condition, pain, or disability prior to this occurrence and the condition, pain, or disability caused by this occurrence and assess liability accordingly. If no apportionment can reasonably be made by you, then the [plaintiff] [defendant] is liable for the entire damage." IDJI 939, 940. Browning argues that the trial court's apportionment was legal error based on the comments to these instructions. A comment to IDJI 939 states that "[i]t is improper to give an instruction of this nature if there is no

evidence that any pain or disability was being caused by the pre-existing condition prior to the occurrence." A comment to IDJI 940 similarly states that "[i]f there is no evidence that a pre-existing bodily condition was causing pain or disability before the occurrence, then the activation of that pre-existing condition makes a defendant liable for all damages proximately caused to the person in that condition. There is no prior pain or disability to segregate." Both of these instructions cite to *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967), and *Bushong v. Kamiah Grain, Inc.,* 96 Idaho 659, 534 P.2d 1099 (1975). Browning claims that she was asymptomatic before the accident with respect to her right shoulder and neck pain, and therefore, the trial court erred in apportioning damages.[2]

Browning's argument is without merit. The body of IDJI 940 and a portion of the comments allow for apportionment between a pre-existing condition and damages from an accident even though the pre-existing condition may not have been symptomatic at the time of the accident. The last bracketed sentence of the second paragraph of IDJI 940 provides: "There may be no recovery, however, for any results which would have normally followed from the pre-existing condition had there been no accident." The corresponding comment states: "Use the last bracketed sentence only if the evidence would justify a finding that some of the results would have occurred as a normal progression of the condition even if there had been no accident."

In the present case, the trial court specifically found that Dr. Bruce Powell and Dr. William Bozarth concluded that Browning's right shoulder strain was related to general work activities rather than the accident, and that Dr. Carl Oeljen concluded that Browning's right shoulder injury was related to natural degeneration combined with her gen-

---

1. Although the case was tried to the court, the court acknowledged in its order denying Browning's motion to alter or amend, that had there been a jury trial, the court would have given an instruction "along the lines of IDJI 939/940."

2. A comment to IDJI 940 states that the instruction should be used for a pre-existing condition which was not causing pain or disability at the

time of the occurrence. The comment further states that "[i]f the pre-existing condition was causing pain or disability, use IDJI 939." Accordingly, if Browning was not experiencing pain or disability in her right shoulder and neck immediately preceding the accident, then IDJI 940 would have been the appropriate instruction to give to a jury.

eral work activities over the years moving heavy bundles of newspapers and newspaper dispensing machines. The court also found, however, that Dr. Pike, who performed the shoulder surgery, concluded that the rotator cuff injury was due to degeneration and the accident, and that it was impossible to separate the two.

Specifically, Drs. Powell and Bozarth state in their medical report, the following: "Diagnosis ... 2. Right shoulder strain with impingement, related to her general work activities." Dr. Oeljen, the only doctor to testify at trial, specifically stated on direct examination by the respondents' attorney:

Q. Did you form any opinion as to the cause of the right shoulder condition of Mrs. Browning?

A. It was my feeling after going through this that it was probably related to her occupation, her age, her handedness and probably not related to any type of traumatic event.

Q. And what was your reason for reaching that decision or that opinion, sir?

A. My reason was basically that the report of the motor vehicle accident did not indicate that this was a violent collision, that most rotator cuff tears do not occur with trauma. They are likely to occur as a result of aging. Most of them that I see don't have a history of injury. Most of them are in the age range where the tensile strength—...

A. I first mentioned that the potential to develop a rotator cuff tear is related to the age of the patient. As we age the tensile strength in the collagen fibers decrease to the point where a relatively minor accident or no accident at all can cause a tear of the rotator cuff. So I think this type of thing is common in her age range. I also feel that it is more likely to occur on the dominant side, because we use that greater than 50 percent of the time. So, it has usually more wear and tear than the nondominant side. It's a common type of thing to see in the middle years.

Dr. Pike testified as follows:

Q. And you talked about degenerative changes with the rotator cuff. Doctor, is what you saw on surgery, the type of damage that you saw on surgery, is that more indicative of some sort of trauma as the cause versus a degenerative process, an ongoing, long-standing degenerative process?

A. Well, as I said, it's a combination of two. And you can't really separate them out. 20 year olds usually don't have rotator cuff tears ... They are always degenerative—There's always a degenerative factor in there.

And this far down the line, you know. A year following surgery you can't tell by the appearance whether it was an acutely traumatic injury or just a slow degradation.

Based on the above evidence, we affirm the district court's conclusion that Browning's shoulder injury was degenerative to some degree and that this could have led to the rotator cuff tear. Three doctors (Drs. Powell, Bozarth and Oeljen) determined that the injury was work-related and one doctor (Dr. Pike) concluded that it was probably caused by both degeneration and the accident. Thus, based on the language of IDJI 940 that no recovery is allowed for any results which would have normally progressed from the pre-existing condition even if there had been no accident, and the language that the trier of fact should apportion, if possible, we conclude that the district court, having weighed all of the evidence, some conflicting, correctly apportioned Browning's damages between her injuries resulting from the accident and from a degenerative pre-existing condition in her right shoulder. Substantial and competent evidence therefore supports the court's finding that: "Nonetheless, it is more probable than not that the auto accident was at least part of the reason Mrs. Browning had to have shoulder surgery."

Browning also argues that the cases cited in IDJI 940, *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397, and *Bushong v. Kamiah Grain, Inc.*, 96 Idaho 659, 534 P.2d 1099, establish that there can be no apportionment, as a matter of law, of her right shoulder and neck pain to any causes other than this accident because she was asymptomatic at the time of the accident. These cases do not specifically so hold.

In *Blaine v. Byers,* Blaine was injured in a traffic accident in a rear-end type collision with a truck driven by Byers. X-rays revealed a "whiplash" type injury to Blaine's neck, and also revealed unsuspected pre-existing advanced degenerative arthritis along the entire spinal column, which was asymptomatic before the accident. This pre-existing arthritic condition was greatly aggravated by the accident and caused considerable pain. A jury awarded Blaine $25,000 in damages. *See* 91 Idaho at 667–669, 429 P.2d at 399–401.

On appeal, Byers asserted that the trial court erred in giving a jury instruction which related to Blaine being entitled to damages for any aggravation of a pre-existing disability caused by the negligence of Byers. The reason Byers argued that the instruction was in error was because the court failed to include the requested portion that Blaine had to prove by a preponderance of the evidence what portion of the disability was attributable to the injury and what portion was alone attributable to the pre-existing arthritic back condition. *See Id.* at 672, 429 P.2d at 404.

This Court, noting that Byers did not provide any legal authority for his proposition that Blaine was required to apportion the causes of his then existing disability, concluded that the trial court did not err in giving the instruction. The Court held: .

[Blaine] by competent, though conflicting, evidence proved that his pre-existing arthritic condition, asymptomatic to the point of the accident, was greatly aggravated and that such condition became symptomatic and disabling as a proximate result of the trauma received in the accident to an arthritic area. It is [a] firmly established principle of the law that one injured by the tortious act of another may recover damages for the aggravation of a pre-existing disability. A defendant in a personal injury action takes the plaintiff as he finds him. Therefore, we find nothing prejudicial in an instruction which in effect advised the jury that the appellants, if negligent, were legally responsible for all of the injuries to the plaintiff, whether the injuries were new ones or whether they were

due to an aggravation of a pre-existing condition.

*Id.* at 673, 429 P.2d at 405 (citations omitted). The Court then explained that by giving this instruction, the trial court correctly advised the jury that Blaine was entitled to recover damages for any disability resulting from the aggravation of a pre-existing condition, but was not entitled to recover for a disability which Blaine may then have suffered from if it was not caused or contributed to by the accident. *Id.* at 674, 429 P.2d at 406. The Court then concluded that

Since where, as in the *Newbury* [*Newbury v. Vogel,* 151 Colo. 520, 379 P.2d 811 (1963) ] case, if the jury could not apportion between the disability resulting from aggravation of the arthritic condition caused by the accident and the disability caused by the arthritic condition alone, [Byers was] liable for the total disability, it would have been error to instruct that [Blaine] had the burden of proving by a preponderance of the evidence the apportionment of his presently existing disability.

*Id.* Thus, this case stands for the proposition that the defendant in a personal injury case has the burden of proof with respect to apportionment of damages between an aggravated pre-existing condition and injuries resulting from an accident, not the plaintiff, and that if apportionment is not possible, then the defendant is liable for all of the plaintiff's damages. Indeed, the last paragraph of IDJI 940 so directs the jury. Thus, although Blaine's arthritis was asymptomatic, the Court did not specifically hold that there can be no apportionment, as a matter of law, if the plaintiff's pre-existing condition is asymptomatic.

Similarly, in *Bushong v. Kamiah Grain, Inc.,* 96 Idaho 659, 534 P.2d 1099 (1975), this Court upheld an instruction which provided that "if the defendants' act of negligence aggravated a pre-existing condition of the plaintiff, and if no apportionment could be made of the disability between that caused by the pre-existing condition and that caused by the defendants' act, then the defendants were liable for the entire damage." Again, this case focuses on the issue whether appor-

tionment is even possible, and if it is not, then if the defendant is found to be negligent, it is liable for all damages arising out of the accident in question, including damages for aggravation of a pre-existing condition. This case does not hold that apportionment is forbidden if the plaintiff's pre-existing condition was asymptomatic at the time of the occurrence.

Thus, in the present case, we hold that the trial court did not err in apportioning damages for Browning's right shoulder and neck injuries, between injuries caused by the accident and any pre-existing degenerative condition, even though she may not have been symptomatic prior to the accident.

**B. Substantial And Competent Evidence Exists In This Case From Which The Trial Court Could Apportion Browning's Damage Between Her Pre-existing Condition And The Accident.**

■ Browning argues that even if apportionment is legally allowed in this case, substantial and competent evidence does not exist to support it. Browning criticizes the specific findings made by the trial court, or criticizes the court for not making a specific finding. However, the trial court is not required to provide a lengthy discussion on every single piece of evidence and every specific factual issue involved in the case. With respect to the findings made by a trial court pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, which is substantively identical to I.R.C.P. 52(a), *Moore's Federal Practice* states:

The findings of the trial court will be liberally construed to support a judgment or order. Consequently, if facts can be inferred from those set forth in the findings, "such inferences will be deemed to have been drawn." While the court's findings must be clear, coherent and complete on all material issues, they should avoid an unnecessarily elaborate review of the evidence.

As a rule, the trial judge is not required to recite every piece of evidence and either adopt it or reject it, or to sort through and discuss the testimony of each witness.

Furthermore, the trial court may disbelieve the testimony of witnesses without giving specific reasons for doing so, provided that the record supports the conclusion that the court made adequate credibility determinations.

The fact that counsel for a party sincerely contended for a position does not mean that findings must be made on that position. A decision between the positions of two litigants necessarily rejects contentions made by one or the other. The trial court's failure to discuss each party's contentions does not make the findings inadequate or suggest that the court failed to understand the propositions.

*Moore's Federal Practice 3d,* § 52.15[2][b].

The trial court's findings of fact in this case are more than sufficient. The court examined all the evidence, both testimonial and documentary, made reasonable inferences from that evidence and then drafted detailed findings of fact and conclusions of law based on that evidence after having reviewed both parties' proposed findings and conclusions. The court's findings of fact and conclusions of law are sufficient to fulfill the purpose of I.R.C.P. 52(a) which is "to provide the appellate court with a clear understanding of the trial court's decision so that it may determine whether the trial court applied the proper law in reaching its ultimate judgment." *The Highlands, Inc. v. Hosac,* 130 Idaho at 70, 936 P.2d at 1312 (1997).

■ Specifically, Browning disagrees with the court's findings with respect to the worker's compensation panel doctors, Drs. Powell and Bozarth. Browning complains that the district court made all of its "illegal" apportionment findings "based on two doctors who didn't examine plaintiff for the trial and who never even testified in this matter." Browning's argument is wholly without merit. As the respondents note, these doctors' medical report, relied upon by the court in making its findings, was admitted into evidence at the trial by Browning as part of a packet of "Stipulated Medical Records." This report was therefore never objected to by Browning. If it had been, the respondents probably would have had Drs. Powell and Bozarth

testify at trial. Browning cannot now claim that this report is unreliable as she stipulated to its admission into evidence.

■ Browning also claims that Drs. Powell and Bozarth misdiagnosed her as they concluded that her shoulder had an impingement rather than a rotator cuff tear. Browning claims this misdiagnosis undercuts any theory of degenerative shoulder problems. This argument is also without merit and in fact, Dr. Powell's and Dr. Bozarth's diagnosis actually does the opposite. No physician diagnosed a rotator cuff tear immediately following the accident, and one reason for that could possibly be that she had not torn her rotator cuff at that time. The fact that she was not diagnosed as having a rotator cuff tear until almost two years after the accident and did not have the surgery until well after two years following the accident indicates that the shoulder problem could very well have been degenerative and that it continued to degenerate after the accident until a rotator cuff tear occurred requiring surgery. Thus, the court even specifically found, based on Dr. Carl Oeljen's report and testimony, that "[r]otator cuff tears are often the result of natural aging and degenerative conditions, which is consistent with the fact that plaintiff did not need surgery on her right shoulder until more than two years following this motor vehicle accident."

Browning next argues that the court ignored actual testimony of "sworn" doctors (as opposed to the "unsworn" doctors whose report was merely stipulated to by Browning). This argument, too, is meritless. The doctors who examined Browning, and either gave a written report or testified or both, did not entirely agree as to the cause of all of Browning's ailments. Therefore, the trial court, sitting as the finder of fact, did exactly what it was obligated to do: it listened to all of the testimony and reviewed all of the documentary evidence, weighed that evi-

dence, found certain witnesses' testimony to be more credible than others, drew reasonable inferences from the evidence, and then issued its written findings of fact and conclusions of law.

**C. Substantial And Competent Evidence Exists To Support The Court's Findings Regarding Browning's Ability To Return To Work As Single Copy Manager.**

Browning takes issue with two specific findings made by the trial court: (1) "The combination of complaints arising out of non-accident events would have precluded plaintiff from performing the duties of Single Copy Manager by no later than January 1997,"[3] and (2) "It was the entire constellation of the plaintiff's physical complaints from various causes which prompted her to abandon the job as Single Copy Manager in March 1995."[4] With respect to the finding relating to Browning quitting her position as single copy manager in March 1995, she argues that the only reason she could no longer perform these duties was because of accident-related problems. Browning also argues that the finding relating to her not being able to work in that position after January 1997 due to non-accident events is pure speculation.

■ The district court made several findings with respect to Browning's long work history with the newspaper and her many years (17) of heavy lifting. The court also made findings with respect to the number of prior injuries and ailments sustained by Browning as a result of the lifting requirements of her job. In making these findings, the court was entitled to draw reasonable inferences from all the evidence. *See, e.g., Howes v. Curtis*, 104 Idaho 563, 566, 661 P.2d 729, 732 (1983) ("the trial court could properly weigh all the evidence and draw permissible inferences which would enable him to find that appellant knew the loan exceeded the maximum statutory interest

---

3. Actually, this is only part of the finding. The entire sentence is as follows: "On a more probable than not basis, no wage loss can be attributed to the accident from January 1997 on forward, as it is more likely than not that the combination of complaints arising ..."

4. Again, this is not the entire sentence, and it should also be read in context with the previous sentence: "It is more probable than not that the plaintiff suffered some cervical strain, a rotator cuff injury, and also some slight aggravation to the pre-existing low back as a result of the accident. However, it is also more probable than not that it was the entire constellation ..."

rate"); *Cazier v. Economy Cash Stores, Inc.*, 71 Idaho 178, 186, 228 P.2d 436, 444 (1951) ("[a]ll reasonable inferences drawn by the trial court where it is a trier of the facts, from the evidence adduced, will be sustained on appeal."). Thus, when considering the findings regarding Browning's pre-existing back condition, her propensity for headaches, her previous left arm and shoulder pain, and her history of chronic neck pain, a reasonable person could conclude that Browning, who was age 58 at the time of trial, would not have been able to continue in the position of single copy manager indefinitely. Rather, it is more probable than not, as the court stated, that it was her over-all physical condition (including a small portion attributable to the accident) which caused her to resign from that position in March 1995. Thus, we conclude that substantial and competent evidence supports this finding of the trial court.

■ We also hold that substantial and competent evidence supports the court's finding that Browning would probably not have been able to continue performing the duties of single copy manager later than January 1997, and thus no wage loss could be attributable to the accident from January 1997 forward.[5] The court had before it voluminous medical records and testimony describing Browning's numerous physical infirmities and disabilities. That combined with the known factors of the physical demands and responsibilities of the single copy manager, which responsibilities include moving and lifting 140 pound newspaper racks and carrying bags of money weighing 40 to 50 pounds, could lead the court to draw inferences regarding when she would be unable to perform those tasks. In its memorandum opinion denying Browning's motion to alter or amend the court's findings of fact, the court stated: "Suffice it to say that based upon all evidence adduced at trial, including evidence of witnesses regarding the physical demands of the single copy manager job, the Court, sitting as the trier of fact, found that other factors, such as the physical demands of the job, the plaintiff's age, her pre-existing physical condition (including her low back problem), disproved the plaintiff's theory that her physical problems which precluded her from

continuing her job as single copy manager were entirely attributable to the accident." Substantial and competent evidence thus exists to support the court's finding that it was more probable than not that no wage loss could be attributable to the accident from January 1997 forward.

**D. The Trial Court's Finding That There Was Some "Slight Aggravation To The Pre-existing Low Back As A Result Of The Accident" Is Specific Enough To Determine How That Fact Entered Into The Court's Findings On Damages, And Is Specific Enough For Meaningful Appellate Review.**

■ Browning argues the respondents are liable for the aggravation of her pre-existing low back pain, which stems from a 1991 work-related accident, and that the court's finding that she suffered a "slight aggravation" as a result of the accident is not specific enough to determine how the court apportioned damages for this aggravation, and that it is not specific enough for meaningful appellate review. Again, Browning fails to quote the entire finding of which she complains. That finding, which was also mentioned in the preceding subsection, states:

It is more probable than not that the plaintiff suffered some cervical strain, a rotator cuff injury, and also some slight aggravation to the pre-existing low back as a result of the accident. However, it is also more probable than not that it was the entire constellation of the plaintiff's physical complaints from various causes which prompted her to abandon the job as Single Copy Manager in March 1995.

Browning claims that the record shows more than a slight aggravation to her pre-existing low back problem, and that the court must set forth the facts it found and how it apportioned the increase in low back problems in order to have any meaningful appellate review. Browning therefore urges the Court to remand the case for further findings.

■ This argument is without merit. The trial court's conclusion that Browning

---

**5.** The court's use of the January 1997 date stems from the fact that this is when Browning re-

turned to work after her right shoulder surgery in the capacity of office clerk.

suffered a slight aggravation to her pre-existing back condition is based on all of the medical records admitted into evidence as well as the testimony at trial. That finding summarizes the court's conclusion on the evidence. The purpose of I.R.C.P. 52(a) is to provide the appellate court with a clear understanding of the basis of the trial court's decision, so that it might be determined whether the trial court applied the proper law to the appropriate facts in reaching its ultimate judgment in the case. *The Highlands, Inc. v. Hosac,* 130 Idaho at 70, 936 P.2d at 1312. If the trial court does not make a specific finding with respect to every factual dispute between the parties, the appellate court will disregard the lack of the findings if the answers are obvious from the record. *Id.* There is no requirement that the fact finder issue an exact percentage of aggravation or enhancement of a pre-existing condition caused by an accident. Therefore, we hold that the trial court's specific finding that Browning suffered a slight aggravation of her prior low back injury, combined with all of the other findings, are adequate to afford this Court with meaningful appellate review.

**E. The Court Correctly Declined To Award Damages For Wage Loss During A Period Where Browning Was Recovering From A Non–Accident Surgery (Carpal Tunnel), Even Though She Had Already Been Taken Off Work For Accident Related Medical Reasons.**

██ Browning argues that the district court erred in finding no wage loss damage for the period she did not work (June 20, 1995 through November 2, 1995) when she was recovering from carpal tunnel surgery, an event wholly unrelated to the accident in this case. Browning asserts that she was first directed not to continue working due to the accident in March 1995, and that when this unrelated condition was addressed later, she was already not working due to the accident and therefore should have been awarded wage loss damages during that time.

This argument is without merit. The district court specifically found that although Dr. Lea took Browning off work on March 14, 1995, due to a variety of complaints, she continued to do limited paperwork for the newspaper part-time at home until June 1995, when she had the carpal tunnel surgery. Furthermore, Browning herself testified that even if the accident had not occurred, she would have been unable to work during that five month period due to the carpal tunnel and trigger release surgery. Thus, the court's conclusion that Browning should be awarded lost income for the period of March 1995 through January 1997, except "not including any award for the period from June 20, 1995 to November 2, 1995—which the Court finds was due exclusively to non-accident causes," is not clearly erroneous. Browning is not entitled to lost wages during a period of time in which she was already unavailable to work.

**F. The Court Did Not Err In Not Making A Finding Regarding The Need For And Cost Of Housekeeping For Browning As A Result Of The Accident.**

██ Browning argues that it was uncontroverted that the injuries sustained in the accident caused Browning to be unable to do more than the lightest housekeeping at her home, and that these services were provided by her two adult daughters who were paid $50.00 per month since the accident. She contends that the trial court erred in not making a specific finding with respect to this issue of damage.

This argument is meritless. Idaho Rule of Civil Procedure 52(a) does not require such a specific finding. In *Quiring v. Quiring,* 130 Idaho 560, 944 P.2d 695 (1997), this Court held that "the specificity of the trial court's findings required by I.R.C.P. 52(a) is not that every factual dispute between the parties must be resolved but, rather, the court's findings need address only those factual issues that are material to resolution of the claims." *Id.* at 566, 944 P.2d at 701. In the present case, there was no specific testimony regarding the number of hours worked by Browning's children or details as to the type of work performed. There was also no specific testimony regarding the need for any such services in the future, including no testimony or evidence from a physician. More-

**18**

over, the evidence showed that to the extent Browning may be unable to perform a particular housekeeping chore, she is at least as much restricted in that regard from her preexisting conditions as from any injuries sustained in the accident. Thus, after having reviewed and weighed all the evidence, the district court was free to conclude that Browning did not need housekeeping services and should not need them indefinitely in the future.

## V.

## CONCLUSION

For all the foregoing reasons, the Court affirms the district court's judgment based on its findings of fact and conclusions of law, and affirms the district court's memorandum opinion and order denying Browning's motion to alter or amend the findings of fact and conclusions of law. We award costs on appeal to respondents. No attorney fees on appeal are awarded.

Chief Justice TROUT, Justices SCHROEDER and WALTERS, and Justice Pro Tem STEGNER concur.